**Richard N. COWDEN, Plaintiff,**

v.

**MONTGOMERY COUNTY SOCIETY FOR CANCER CONTROL, et al., Defendants.**

**No. C–3–81–436.**

United States District Court, S.D. Ohio, W.D.

Jan. 27, 1984.

James M. Moore, Cincinnati, Ohio, for plaintiff.

Margo Evans, Dayton, Ohio, for defendant Montgomery County Soc. for Cancer Control.

Gregory P. Dunsky, Dayton, Ohio, for defendant United Way, Inc.

DECISION AND ENTRY DECLARING DEFENDANT UNITED WAY'S MOTION TO DISMISS (DOC. # 3) TO BE MOOT; GRANTING DEFENDANTS' RESPECTIVE MOTIONS TO STRIKE PLAINTIFF'S DEMAND FOR A JURY TRIAL AND GRANTING DEFENDANT SOCIETY'S MOTION FOR SUMMARY JUDGMENT ON COUNT I OF THE AMENDED COMPLAINT AND GRANTING IN PART AND OVERRULING IN PART SAID MOTION DIRECTED TO COUNT II OF THE AMENDED COMPLAINT; GRANTING DEFENDANT SOCIETY'S MOTION FOR SUMMARY JUDGMENT ON THE PRAYED FOR RELIEF OF PUNITIVE DAMAGES; CLARIFICATION OF TIME LIMITATIONS ON PLAINTIFF'S CLAIMS PURSUANT TO DEFENDANT UNITED WAY'S MOTION IN LIMINE; FURTHER PROCEDURES ORDERED OF COUNSEL; CONFERENCE CALL TO BE SET AFTER RECEIVING PLAINTIFF'S SUBMISSION

RICE, District Judge.

This matter is before the Court for resolution of several motions presently pending. Defendant United Way has filed a Motion to Dismiss the Complaint as to United Way pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted (Doc. # 3). Defendant, Montgomery County Society for Cancer Control has filed a Motion for Summary Judgment with respect to Counts I and II of the Complaint (Doc. # 15) and a Motion to Strike Plaintiff's Demand for a Jury Trial (Doc. # 21). Defendant, United Way, Inc. of Dayton, has filed a Motion in

Limine (Doc. # 18), and has also filed a Motion to Strike Plaintiff's Demand for a Jury Trial (Doc. # 19).

## I. BACKGROUND

The captioned cause was filed by Plaintiff, Richard N. Cowden, pursuant to 28 U.S.C. § 1331[1] and 29 U.S.C. § 1132(a)(1)(B), the Civil Enforcement provision of the Employee Retirement Income Security Act (ERISA). Plaintiff, formerly an employee of Defendant Montgomery County Society for Cancer Control (the Society), alleges that various acts and omissions of both the Society and the United Way, Inc. of Dayton (the United Way), constituted violations of Plaintiff's rights under the pension plan and under various ERISA provisions.

The Society is an affiliated agency of the United Way, Inc., of the Dayton area. The pension plan, which appears to be the focal point of the present dispute, is a defined benefit plan administered by United Way and underwritten by the National Health & Welfare Mutual Life Insurance Association, Inc. ("NHW"). (Complaint, Exhibit A)

In Count I, Plaintiff notes that the Society has the responsibility of providing the United Way with salary information on its employees for the purpose of enabling the United Way to calculate the employees' levels of retirement benefits. According to Plaintiff, the Society has understated Plaintiff's salary in its reporting to the United Way and as a result he will receive substantially reduced benefits if he retires in 1980.

Count II alleges that Plaintiff has, during the course of his employment, attempted on several occasions to obtain information concerning his pension rights and benefits, that the Society refused to provide him with the requested information and that, the Society intentionally discriminated against him in various ways in his employment because he attempted to obtain said information.

In Count III, Plaintiff alleges that Defendant United Way has known of and condoned the alleged wrongful conduct of the Society, and has also wrongfully denied Plaintiff information concerning his pension rights and benefits and has breached its "duty" to Plaintiff with respect to his pension rights and benefits, deferred annuity and hospitalization benefits and in various other unspecified ways.

For all of the various wrongs alleged to have been committed by each of the Defendants, Plaintiff seeks to recover an unspecified amount of compensatory damages, as well as $50,000 in punitive damages, from each of the Defendants. Plaintiff has also requested that this matter be tried to a jury.

## II. THE APPLICABLE PROVISIONS GOVERNING JURISDICTION

Plaintiff alleges that the Court has subject matter jurisdiction over this controversy pursuant to 28 U.S.C. § 1331 (cited in note 1) and 29 U.S.C. § 1132(a)(1)(B) which provides:

(a) A civil action may be brought—

(1) by a participant or beneficiary—

\* \* \* \* \* \*

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

Certain paragraphs of Counts II and III of Plaintiff's complaint do appear to allege claims that, if true, would be properly redressible under the provision just cited which permits a beneficiary of a pension plan to bring a civil suit to recover benefits and to clarify and enforce his rights under his pension plan. Many of the paragraphs of Plaintiff's Complaint, however, appear to focus less on preserving Plaintiff's rights to his benefits under the plan and more upon the obligations and duties of the employer and plan administrator, as detailed in various ERISA statutory provisions as well as under the plan. Though

**1.** 28 U.S.C. § 1331 provides:

Federal question
The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

Plaintiff does not specify which statutory provisions he feels Defendants have violated, it would appear that Plaintiff is alleging that the Defendants have failed to comply, *inter alia,* with the information reporting and disclosure requirements contained in 29 U.S.C. §§ 1021(a), 1022, 1024(b)(3), and 1025(a) and (c) and that they have interfered with his rights under the pension plan in violation of 29 U.S.C. § 1140.[2] Moreover, Plaintiff appears to be alleging that Defendant United Way has somehow breached its fiduciary duty as detailed in 29 U.S.C. § 1104,[3] though it is not at all clear from the Complaint how the wrongs alleged could be construed as violations of this section.

To the extent the Complaint seeks to enforce the Society's and United Way's compliance with their respective obligations under the ERISA provisions, such as those just cited, as well as under the plan, the action is maintainable under 29 U.S.C. § 1132(a)(3) which provides:

(a) A civil action may be brought—

\* \* \* \* \* \*

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

*See, Kross v. Western Electric Co., Inc.,* 534 F.Supp. 251, 253 (N.D.Ill.1982) (suit to

**2.** 29 U.S.C. § 1140 provides:
Interference with protected rights
It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act, or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act. It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this Act or the Welfare and Pension Plans Disclosure Act. The provisions of section 1132 of this title shall be applicable in the enforcement of this section.

**3.** 29 U.S.C. § 1104 provides:
Fiduciary duties
(a)(1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with a plan solely in the interest of the participants and beneficiaries and—
(A) for the exclusive purpose of:
(i) providing benefits to participants and their beneficiaries; and
(ii) defraying reasonable expenses of administering the plan;
(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter.
(2) In the case of an eligible individual account plan (as defined in section 1107(d)(3) of this title), the diversification requirement of paragraph (1)(C) and the prudence requirements (only to the extent that it requires diversification) of paragraph (1)(B) is not violated by acquisition or holding of qualifying employer real property or qualifying employer securities (as defined in section 1107(d)(4) and (5) of this title).
(b) Except as authorized by the Secretary by regulation, no fiduciary may maintain the indicia of ownership of any assets of a plan outside the jurisdiction of the district courts of the United States.
(c) In the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over assets in his account, if a participant or beneficiary exercises control over the assets in his account (as determined under regulations of the Secretary)—
(1) such participant or beneficiary shall not be deemed to be a fiduciary by reason of such exercise, and
(2) no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control.

enforce 29 U.S.C. § 1140 brought under 29 U.S.C. § 1132(a)(3)); *McGinnis v. Joyce,* 507 F.Supp. 654, 657 (N.D.Ill.1981) (failure to supply information as required by ERISA provision and discriminatory conduct proscribed in 29 U.S.C. § 1140 redressible under 29 U.S.C. § 1132(a)(3)); *Bittner v. Sadoff & Rudoy Industries,* 490 F.Supp. 534, 535 (E.D.Wisc.1980) (redress for discriminatory conduct proscribed in 29 U.S.C. § 1140 brought pursuant to 29 U.S.C. § 1132(a)(3)); *see also, West v. Butler,* 621 F.2d 240 (6th Cir.1980) (assuming without deciding that 29 U.S.C. § 1140 enforceable under 29 U.S.C. § 1132(a)(3)).

The Court finds that the above clarification of the provisions pursuant to which this action is properly maintainable is a necessary preliminary step to addressing certain of the pending motions, to which the Court now turns.

## III. DEFENDANT UNITED WAY'S MOTION TO DISMISS

On August 26, 1981, the United Way filed a Motion to Dismiss the Complaint as it relates to the United Way on the grounds that Plaintiff's Complaint failed to allege any wrongful conduct on the part of United Way and, thus, had failed to state a claim upon which relief could be granted. (Doc. # 3) Subsequent to the filing of that motion, Plaintiff filed and Amended Complaint wherein specific allegations are made concerning acts and omissions by the United Way which Plaintiff claims entitle him to some form of relief. (Doc. # 6)

■ As the Amended Complaint appears to have cured the defect in the originally filed Complaint and as Defendant United Way has filed an Answer to this Amended Complaint (Doc. # 7), the Court finds United Way's Motion to Dismiss to be moot.

## IV. DEFENDANTS' MOTIONS TO STRIKE JURY DEMAND

Both Defendants have filed motions to strike Plaintiff's demand for a jury trial in this matter claiming that the ERISA civil enforcement provisions pursuant to which this action has been filed provide for equitable actions which are not properly triable to a jury.

To the extent the present suit states a claim that is actionable under Section 1132(a)(3), the clear language of the statute irrefutably corroborates the Defendants' contention that the present action is equitable. A plaintiff may, pursuant to Section 1132(a)(3), bring an action to "enjoin" violative conduct or to seek "other appropriate equitable relief." The parties have not cited, nor has the Court identified, any case in which a court has questioned the purely equitable nature of a 1132(a)(3) claim. To the contrary, the courts addressing the issue have accepted without question the equitable nature of such actions. *See, e.g., Wardle v. Central States Southeast & Southwest Areas Pension Fund,* 627 F.2d 820 (7th Cir.1980); *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981); *Calamia v. Spivey,* 632 F.2d 1235 (5th Cir. 1980); *McGinnis v. Joyce,* 507 F.Supp. 654 (N.D.Ill.1981); *Stamps v. Michigan Teamsters Joint Council No. 43,* 431 F.Supp. 745 (E.D.Mich.1977).

Any controversy that has existed as to whether the Civil Enforcement provisions of ERISA provide for an equitable or legal cause of action has focused on Section 1132(a)(1)(B) actions. Though one court held that such actions were legal in nature (*Stamps v. Michigan Teamsters,* 431 F.Supp. at 747), the present weight of authority has disagreed with the reasoning in *Stamps* and concluded that section 1132(a)(1)(B) provides for an equitable cause of action. *See, Wardle v. Central States,* 627 F.2d at 829; *Calamia v. Spivey,* 632 F.2d 1235 (5th Cir.1980); *Diano v. Central States, Southeast & Southwest Areas Health & Welfare Pension Funds,* 551 F.Supp. 861 (N.D.Ohio 1982). The Court finds the reasoning of the *Wardle* court to be persuasive in reaching the conclusion that Section 1132(a)(1)(B) actions are equitable. As discussed in *Wardle,* prior to the enactment of ERISA, suits to recover pension benefits were brought in state courts under the law of trusts and were considered equitable in character. As

Congress was silent on the right to a jury trial under the Civil Enforcement provision, the court concluded the "most reasonable interpretation is that Congress intended to provide general federal jurisdiction over these equitable suits that had traditionally been brought in state courts." *Wardle*, 627 F.2d at 820. The fact that federal and state courts share concurrent jurisdiction over 1132(a)(1)(B) actions[4] further evidences the likelihood that Congress intended the civil enforcement provision to provide a federal forum to pursue an action not inconsistent with the equitable action available in state courts. *Id.; see also, Calamia v. Spivey*, 632 F.2d 1235.

■ Having determined that actions brought pursuant to either section 1132(a)(1)(B) or (a)(3) are equitable, the courts which have addressed the issue have found that civil enforcement suits do not constitute matters properly triable to a jury. *See, Wardle v. Central States*, 627 F.2d 820; *Calamia v. Spivey*, 632 F.2d 1235; *In Re Vorpahl*, 695 F.2d 318 (8th Cir.1982); *Diano v. Central States*, 551 F.Supp. 861; *Rubin v. Decision Concepts, Inc.*, 566 F.Supp. 1057 (S.D.N.Y.1983). The Court concurs that the present action is equitable in nature and that the applicable statutory provisions do not confer on Plaintiff a right to a jury trial. The Court, therefore, grants both Defendants' motions (Doc. # 19, # 21) to strike Plaintiff's demand for a jury trial.

## V. THE SOCIETY'S MOTION FOR SUMMARY JUDGMENT

### A. COUNT I

When Plaintiff originally filed the instant action, he sought in Count I to clarify and to enforce his rights to future pension ben-efits. He evidently felt that his benefits would be less than what he should in fact be entitled to receive because, he claimed, the Society had understated his salary level in its periodic reports to the United Way and because the level of his pension benefits would be calculated based upon the alleged understated salary level. Plaintiff sought, in Count I, to have the Court override the formula for calculating pension benefits as detailed in the pension plan and to issue an order "declaring that his pension benefits shall be calculated on the basis of an average yearly income for the period 1971 through 1975 of $28,012.41 for purposes of the Final Average Earnings requirement of [the pension plan]," and "for an order enforcing his rights under the terms of said."

■ Now that Plaintiff has retired, his concern over what pension benefits he may be entitled to receive at some future time has become moot. As he is presently entitled to receive his pension benefits, the issue now, if any, would be whether he is in fact receiving the level of benefits he believes is owing to him. However, should Plaintiff feel that his pension benefits are in fact understated, then he has available to him under the terms of the pension plan, as is required by 29 U.S.C. § 1133,[5] a claims and review procedure with NHW of which he must avail himself before the Court can be asked to intercede on his behalf in aiding him to receive the benefits to which he claims to be entitled. *Amato v. Bernard*, 618 F.2d 559, 566–568 (9th Cir.1980). At this juncture, there is nothing before the Court to indicate that Plaintiff has even taken that critical first step of submitting to NHW his claim for benefits. Thus, the Court has no way of knowing if Plaintiff may even have a potential, let

---

**4.** 29 U.S.C. § 1132(e)(1) provides for district court and state court concurrent jurisdiction over section 1132(a)(1)(B) actions.

**5.** 29 U.S.C. § 1133 provides:

In accordance with regulations of the Secretary, every employee benefit plan shall—

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

alone actual, problem with the level of benefits he is entitled to be receiving.

From the outset, the concerns raised by Plaintiff in Count I appeared to the Court capable of being assuaged or resolved, *if* Plaintiff's attorney were to engage in a careful reading of the terms of the pension plan and the built-in protections to Plaintiff's benefits afforded therein *and* if Plaintiff's attorney were to have directed the appropriate inquiries to the proper party as identified in the plan (i.e. NHW). The Court urged the parties, therefore, in a conference call in August of 1982, to attempt to enter a stipulation as to Count I. Well over a year has passed, Plaintiff has retired, the proper course of action available to Plaintiff to receive his benefits is spelled-out with patent clarity in the plan summary which Plaintiff attached to his Complaint, and yet Plaintiff, nevertheless, apparently persists in claiming a right to relief under Count I. The Court simply cannot conjure up a reason why Plaintiff would be unable to stipulate Count I out of this proceeding, but, as the Court is without power to afford any sort of relief as to whatever may be deemed to remain of Count I, Defendant's Motion for Summary Judgment as to Count I is granted and Plaintiff is thus put to pursuing his administrative procedure and, if need be, his administrative remedy.

## B. COUNT II

In Count II, Plaintiff lists a number of alleged acts and omissions on the part of the Society which Plaintiff claims to have been motivated by the Society's desire to discriminate against Plaintiff because he attempted to obtain information on his pension rights and benefits to which he had a legal right. Defendant Society has moved for summary judgment on each of the claimed acts of discrimination, claiming that there is no genuine issue of material fact with respect to each of the allegations and that none of them constitute discriminatory conduct. Having reviewed the affidavits and other matters submitted by the parties, the Court concludes that the Society is entitled to summary judgment on the following allegations or issues raised in Count II:

1. Plaintiff alleges in ¶ 16(A) of his Amended Complaint (Doc. # 6) that the Society discriminated against him by "failing to make sufficient and proper payments toward Plaintiff's pension benefits." To begin with, Plaintiff has failed to provide the Court with any explanation of how or upon what basis he has reached the conclusion that the amount contributed in the past by the Society toward his pension plan will have any bearing whatsoever upon the amount of benefits he will ultimately receive. Moreover, Plaintiff has not even properly substantiated his claim that the Society has in fact contributed less than it should have. Plaintiff's affidavit attached to his Memorandum Contra Defendant's Motion for Summary Judgment makes reference to pay checks he has received which reflected a rate of contribution different from that reported to have been contributed by the Society in the correspondence Plaintiff received on the topic from Edwin Benjamin, Jr., the Executive Director of the Society. (Exhibit A, Benjamin Affidavit, Defendant Montgomery County Society for Cancer Control's Motion for Summary Judgment, (Doc. # 15), Ex. 2, 3) Plaintiff has failed, however, to attach copies of these pay checks, or the respective statements of earnings, despite the clear mandate of Fed.R.Civ.P. 56(e) that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached ... or served" with supporting or opposing affidavits.

Even if the Court accepts as true that the Society understated its estimates of Plaintiff's yearly earnings and thus contributed less toward his pension fund than in fact should have been contributed, Plaintiff has failed to demonstrate that there is any conceivable possibility that he will be injured because of the Society's purported deficient contributions. As explained in the Pension Plan Summary, and the Benjamin correspondence cited above, the formula for calculating Plaintiff's retirement benefits takes into consideration three factors:

(1) "Final Average Earnings" is the average of your annual earnings during the five consecutive calendar years out of your last ten completed years of service which produced the highest average earnings.

(2) "Credited Service" includes your total years and months of service with us as a participant in a retirement plan underwritten by NHW, plus any other service with us beginning on the date you become eligible to participate in this Plan....

(3) "Social Security Average Annual Wage" is the maximum average wage upon which social security benefits are calculated for any person retiring in a given year. This figure may change each year. The figure applicable to your benefit will depend on the year you retire (or the year you terminate employment, if earlier).

Complaint, Exhibit A at 23.

The plan summary also supplies the formula that will be used to calculate Plaintiff's benefits:

Your annual retirement benefit beginning at your normal retirement date will be based on the following formula:

1% of your Final Average Earnings multiplied by your total years of Credited Service, plus

1% of your Final Average Earnings in excess of the Social Security Average Annual Wage, multiplied by your total years of Credited Service up to a maximum of 25 years.

The retirement benefit you have accrued under our prior Plan is included in the retirement income payable under this Plan.

*Id.*

Noticeably lacking in the formula and the factors taken into consideration therein, is any indication that the employer's level of contribution has any impact on the amount to which the employee is ultimately entitled to receive. The critical factors are Plaintiff's annual earnings and years of service. Moreover, as discussed above, now that Plaintiff has retired, if he has an objection to the amount of benefits he is found to be entitled to receive, he must first pursue his administrative remedy with NHW. Thus, not only is it less than clear how, if at all, Plaintiff could be injured if the Society failed to contribute a sufficient amount towards Plaintiff's pension plan, but also, even assuming arguendo, Plaintiff could be injured, he has failed to pursue his administrative remedy with NHW.

For all the reasons just discussed, the Court concludes that Defendant is entitled to summary judgment of the issue of whether it discriminated against Plaintiff by failing to make sufficient and proper payments towards Plaintiff's pension benefits.

2. Plaintiff alleges in ¶ 16(B) of his Amended Complaint (Doc. # 6) that the Society has furnished "false information pertaining to Plaintiff's compensation and employment status to the pension plan administrator." Again, Plaintiff provides the Court with no documentation to support this allegation and has failed to explain, how, even if true, the benefits he ultimately receives will in any way be diminished because of the alleged reporting deficiencies and inaccuracies with respect to Plaintiff's compensation and employment status. Defendant, on the other hand, has repeatedly explained to Plaintiff that NHW will calculate his benefits on his actual earnings, not on the estimated figures submitted in the past by the Society. (Benjamin Affidavit, ¶ 5, Exhibits 2 & 3, Doc. # 15). Moreover, as Plaintiff has retired and has a present right to benefits, he must first, as explained previously, submit his claim and resulting objections, if any, to NHW. Plaintiff has failed to demonstrate that allegation 16(B) contains any genuine issue of material fact presently triable to this Court and thus Defendant is granted summary judgment on the issue of whether it discriminated against Plaintiff by providing the plan administrator with false information concerning Plaintiff's compensation and employment status.

3. Plaintiff alleges in ¶ 16(C) of his Amended Complaint (Doc. # 6) that the Society falsely and fraudulently induced Plaintiff to make inaccurate representations to the plan administrator which the Society knew would result in a reduction of his pension and other benefits. Nowhere does Plaintiff specify what inaccurate representations he was allegedly induced to make or how these purported misrepresentations could affect his level of pension or other benefits. Defendant, however, has submitted affidavits attesting to the fact that Plaintiff as an employee was entitled to the full range of benefits according to his contract (Haller Affidavit ¶ 1, Doc. # 15 Exhibit B, Benjamin Affidavit ¶ 11, Doc. # 15, Exhibit A) and that the only instance involving Plaintiff's status as an employee concerned switching his classification from a full-time to that of a part-time employee at the recommendation of NHW and which, though originally considered as a means to benefit Plaintiff under the pension plan, in fact has no impact at all on his pension or other benefits. (Haller Affidavit ¶ 8; Benjamin Affidavit ¶ 10). There is, then, simply no factual basis in the record to support Plaintiff's allegation that the Society fraudulently induced Plaintiff to do anything, or that there was anything that Plaintiff did at the suggestion, fraudulent or otherwise, of Defendant Society that had any impact on his pension benefits. Defendant, therefore, is granted summary judgment on the issue of whether it discriminated against Plaintiff by fraudulently inducing him to make inaccurate representations to the plan administrator.

4. Plaintiff, in ¶ 16(D) of the Amended Complaint, claims he was discriminated against when he was refused access to records and other information to which he was entitled by law. Plaintiff does not specify with which statutory provisions the Society failed to comply, and in fact, in Plaintiff's Memorandum in response to Society's Motion for Summary Judgment on this issue, Plaintiff responds to Society's argument and proof that Plaintiff received all the information to which he was entitled by countering, "Plaintiff does not dispute

that he has been furnished with certain information pertaining to his pension rights and benefits. It is not the quantity but the quality of the information pertaining to his pension rights and benefits." Plaintiff then goes on to complain that it took "years" to obtain any response from Defendant and that when the information was received, it demonstrated that Defendant was not providing NHW with accurate information. (Plaintiff's Memorandum in Opposition to Motion for Summary Judgment of Defendant, Montgomery County Society for Cancer Control, Doc. # 16, p. 3)

According to ERISA, Plaintiff, as a pension plan participant, is entitled to the following information: (1) a Plan Summary (29 U.S.C. § 1022(a)(1)) which he clearly received as said Plan Summary was attached to his complaint as Exhibit A; (2) according to 29 U.S.C. § 1021(a)(2) "the information described in 1024(b)(3), and 1025(a) and (c)". Section 1024(b)(3) requires the plan administrator to furnish each participant after the close of the fiscal year with "a copy of the statement and schedules, for such fiscal year, and such other material as is necessary to fairly summarize the latest annual report." Plaintiff neither specifically argues that he did not receive these annual reports, nor does he offer any evidence that these reports were not forthcoming in a timely fashion. Defendant, on the other hand, has provided the Court with a sworn affidavit that Plaintiff was provided with the required annual statements. (Benjamin Affidavit ¶ 2, Doc. # 15, Exhibit A).

Section 1025(a) requires that the plan administrator provide an employee, upon receipt of a written request "on the basis of the latest available information—(1) the total benefits accrued, and (2) the non-forfeitable pension benefits, if any, which have accrued, or the earliest date on which benefits will become non-forfeitable." Section 1025(b) provides that the employee is only entitled to one such report a year. Plaintiff does not argue that he has not received these reports and, in fact, stated in his deposition that he has received from

NHW, on a yearly basis since 1974, an estimate of the pension benefits to which he would ultimately be entitled. (Cowden Deposition, Vol. III, pp. 62–63).

Nor does Plaintiff claim that he has not been granted access to the information required by 29 U.S.C. § 1024(b)(2) to be made available to him at the United Way, i.e., copies of the plan description, the latest annual report, the "bargaining agreement, trust agreement, contract, or other instruments under which the plan was established or is operated."

█ The record, in summary, is completely devoid of even so much as a hint of what information Plaintiff claims in his Amended Complaint he has been denied. In fact, as noted above, by way of argument in his Memorandum Contra Defendant's Motion for Summary Judgment, Plaintiff appears to be attempting to retract this allegation and to recast it in terms of a previously made allegation concerning the inaccuracy of the information reported by the Society to NHW. The Court has already addressed and found without merit Plaintiff's contentions concerning the alleged misreporting of salary information and under contributions by the Society. To the extent Plaintiff is attempting to argue that it took "years" to get the information to which he was entitled, the Court finds that, even if this allegation is true, the fact that Plaintiff concedes he received the information, leaves the Court at a loss as to how Plaintiff has been injured and as to the sort of equitable relief he should thus receive. Based upon the foregoing discussion, the Court finds that there is absolutely no factual basis for the claimed denial of information required by law to be provided, and concludes, therefore, that Defendant Society is entitled to summary judgment on this issue contained in ¶ 16(D) of Plaintiff's Amended Complaint.

C. The Remaining Allegations of Discriminatory Conduct

In subparagraphs E–J, Plaintiff claims that he was discriminated against "with respect to his salary, hospitalization and medical insurance, bonuses, pay raises, overtime pay, reimbursement of employment-related expenses, sick leave and other employment benefits" (Amended Complaint, Doc. # 6, ¶ 16(E)); and discriminated against by being terminated on December 2, 1976 and then re-employed under unfair conditions, "discriminatory and calculated to prevent Plaintiff from exercising his rights guaranteed by law with respect to his pension (*Id.* ¶ 16(F)) and (G); by having his job performance falsely criticized (*Id.* ¶ 16(H); by having his salary 'arbitrarily and drastically' reduced in July of 1977 resulting, in a reduction of Social Security contributions." (*Id.* ¶ 16(I)); and by being denied the opportunity to contribute to an employee deferred annuity plan" (*Id.*, ¶ 16(J)).

█ When these allegations are read in conjunction with Mr. Cowden's Deposition and his affidavit submitted with his Memorandum Contra Defendant's Motion for Summary Judgment, it appears that there is sufficient question as to the inferences to be drawn from the events giving rise to these allegations to withstand Defendant's Motion for Summary Judgment on these issues. The Court notes that a reading of the entire record in this proceeding reveals that Plaintiff was, or perhaps still is, extremely unhappy about the way in which he feels the Society treated him while he was an employee. However legitimately may be Plaintiff's rancor with the Society, the question that unavoidably arises from a reading of the record is, are these claims and allegations properly maintainable as a cause of action under ERISA for "interference with protected rights" pursuant to 29 U.S.C. § 1140? This statutory provision prohibits an employer from discharging, firing, suspending, expelling, disciplining, or discriminating against a plan participant or beneficiary because he attempted to exercise rights to which he is entitled "under the provisions of an employee benefit plan,' this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act, or for the

purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act."

Events apparently transpired in the employment relationship between the Society and Mr. Cowden and, for the purposes of Defendant's Motion for Summary Judgment, a genuine issue of material fact exists as to the inferences to be drawn from these events with respect to the intent of the Society and whether the alleged conduct of the Society was violative of 29 U.S.C. § 1140. Whether these same allegations and asserted factual bases will be sufficient to withstand a motion for directed verdict, is certainly less than apparent at this stage of the proceeding. The Court, therefore, feels compelled to suggest to Plaintiff that it may be prudent to re-examine the allegations that have withstood the Society's Motion for Summary Judgment before further pressing on to the trial. In particular, Plaintiff should give consideration to 29 U.S.C. § 1132(g) which would permit the awarding of attorney fees and costs to Defendants at the discretion of the Court, if for example, Plaintiff's purported ERISA claims should prove to be without merit.

## VI. SOCIETY'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF THE PRAYED FOR RELIEF OF PUNITIVE DAMAGES

Defendant Society contends that, as a matter of law, Plaintiff is not entitled to the compensatory or punitive damages he seeks because the present action is equitable in nature, thus limiting Plaintiff to such equitable relief as the Court may deem necessary to undo the effects of any wrongful conduct on the part of the Defendants.

The Court notes that Plaintiff has included a demand for an unspecified amount of compensatory damages from each Defendant. Because the Court construes this demand to mean Plaintiff demands whatever monetary relief the Court may find appropriate in shaping any equitable remedy herein, the Court does not find it necessary to determine whether compensatory damages as such, to the extent they can be distinguished, would be recoverable in this action.

The courts are not in complete accord on the issue of whether punitive damages are recoverable under the civil enforcement provision of ERISA. The resolution of this question appears to hinge, at least in large part, on the precise nature of the allegations made by the Plaintiff and the identity of the party or entity from whom the plaintiff seeks redress. Courts addressing claims of beneficiaries brought pursuant to Section 1132(a)(3) alleging conduct proscribed by 29 U.S.C. § 1140 (interference with protected rights) or other violations not amounting to breaches of fiduciary duty, have generally found punitive damages non-recoverable. *See, Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208, 1216–17 (8th Cir.1981), *cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981); *Maxfield v. Central States, Southeast & Southwest Areas Health, Welfare & Pension Funds,* 559 F.Supp. 158, 160 (N.D.Ill.1982); *Diano v. Central States,* 551 F.Supp. 861, 863 (N.D.Ohio 1982); *Calhoun v. Falstaff Brewing Corp.,* 478 F.Supp. 357, 359 (E.D.Mo.1979); *Horn v. Retirement Fund Trust,* 424 F.Supp. 80, 82 (C.D.Calif.1976).

As explained by the Eighth Circuit in *Dependahl:*

> We do not think punitive damages are provided for in ERISA. Ordinarily, punitive damages are not presumed; they are not the norm; and nowhere in ERISA are they mentioned.... We believe that, as a matter of federal common law, an award of punitive damages is inappropriate to a claim of interference with employee benefit plans.

*Dependahl,* 653 F.2d at 1216.

Those cases in which punitive damages have been found to be recoverable have, by and large, been actions against a fiduciary for breach of its fiduciary duties detailed in 29 U.S.C. § 1104. *See, e.g., Jiminez v.*

*Pioneer Diecasters,* 549 F.Supp. 677 (C.D. Calif.1982); *Free v. Gilbert Hodgman, Inc.,* 3 EBC 1010 (N.D.Ill.1982); *Short v. Junior Steel Co. Employees Pension Plan & Trust,* 317 BNA Pension Reporter A–13 (C.D.Calif., Sept. 18, 1980); *Eaton v. D'Amato,* 581 F.Supp. 743 (D.D.C.1980). *But see, Bittner v. Sadoff,* 490 F.Supp. 534, 536 (E.D.Wisc.1980), (§ 1132(a)(3) action for violation of § 1140, finding claim for punitive damages not so far removed from what Plaintiff may be entitled to recover on the merits to warrant striking claim).

These courts have generally found exemplary damages to be recoverable under appropriate circumstances for breaches of fiduciary duties, at least in part, because such awards may serve to further the interests of Congress in enacting the ERISA provisions, to wit:

> "to protect ... the interests of participants in employee benefit plans and their beneficiaries ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions and ready access to the Federal courts. 29 U.S.C. § 1001(b).

Arguably awards of punitive damages against fiduciaries who engage in misconduct with respect to the pension plans they are administering serve as a deterrent to others placed in the sensitive position of managing the assets and investments of employees' pension plans.

The allegations of Plaintiff which assert that the Defendants failed to provide information to Plaintiff and interfered with Plaintiff's rights under the pension plan and ERISA, may constitute violations of other ERISA provisions, but they do not appear to be conduct proscribed by the ERISA fiduciary provisions, as such. The clear focus of the ERISA fiduciary provisions is on the management of the pension plan itself for the interests of the participants and beneficiaries, not upon conduct directed to a particular employee. *See,* 29 U.S.C. § 1104 Fiduciary Duties.

Moreover, the Society as an employer, is not even considered to be a fiduciary under 29 U.S.C. § 1002(21)(A) which provides in relevant part:

> (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

Thus, the Society is not even in a position to have breached a fiduciary duty to the Plaintiff under ERISA.

■ The Court concludes that punitive damages are not recoverable to the extent the Complaint states an actionable claim under 29 U.S.C. § 1132(a)(3) and (a)(1)(B) for various alleged failures by the Society and United Way to comply with the information reporting and disclosing requirements of ERISA and the pension plan and for allegedly discriminating against Plaintiff in violation of the proscriptions contained in 29 U.S.C. § 1140. The only redress to which Plaintiff is entitled under § 1132(a)(3) is whatever equitable relief the court deems appropriate.

Even assuming, despite appearances to the contrary, that Plaintiff has stated a claim against the United Way that could be viewed as being a violation of its fiduciary responsibilities, the Court finds that Plaintiff has failed to allege any breach sufficiently "wilful, malicious, or outrageous to warrant an assessment of punitive damages." *Diano v. Central States,* 551 F.Supp. at 863.

The Court, therefore, grants Defendants Society's motion for summary judgment on Plaintiff's demand for punitive damages.

## VII. DEFENDANT UNITED WAY'S MOTION IN LIMINE FOR AN ORDER LIMITING THE EVIDENCE PLAINTIFF MAY ADMIT IN THIS CIVIL ACTION

■ Defendant United Way contends that the controlling statute of limitations in this action is contained in 29 U.S.C. § 1113 [6] which would, if applicable, limit Plaintiff to seeking redress for those wrongs which took place within the three years preceding the filing of the present action on August 18, 1981. By its own terms, however, the ERISA provision is only directly applicable to actions alleging violations of "this part", i.e., Part 4 entitled Fiduciary Responsibility, and thus does not explicitly control actions alleging violations of other ERISA or pension plan provisions.

The failure of Plaintiff to identify the specific ERISA provision he feels Defendants have violated complicates, somewhat, the task of identifying the controlling statute, or statutes, of limitation. To begin with, the Court has already indicated that the Complaint, though generally alleging United Way breached its "duty" to Plaintiff, does not appear to allege any conduct that, if true, would constitute a breach of United Way's fiduciary duty under ERISA. Nonetheless, to the extent any of the alleged deeds of misconduct state a claim under other ERISA provisions, the potential liability of the United Way is limited in the first instance by the fact that United Way did not become plan administrator of Plaintiff's pension plan until July of 1976. (Plaintiff's Complaint, ¶ 5) Plaintiff does not allege, nor can the Court divine, any possible means by which the United Way could be held accountable for any wrongful conduct on the part of the Society prior to July of 1976, when it became the pension plan administrator.

■ The second limitation on Plaintiff's claims with respect to the United Way derives from application of the appropriate statute of limitations. If in fact any of Plaintiff's allegations rise to the level of being breaches of United Way's fiduciary duty as plan administrator, then, 29 U.S.C. § 1113 would be the controlling statute of limitation. *See, e.g., Davidson v. Cook,* 567 F.Supp. 225, 235 (E.D.Va.1983); *Livolsi v. City of New Castle, Pa.,* 501 F.Supp. 1146 (W.D.Pa.1980). Thus, Plaintiff is foreclosed from alleging any breaches of fiduciary duty which occurred six years prior to the filing of this action, or, if Defendant United Way can demonstrate that the Plaintiff had actual or constructive knowledge of the alleged breach of fiduciary duty, then Plaintiff will be precluded from attempting to seek redress for violations of which he knew more than three years prior to the filing of this action.

The statutes of limitation applicable to the remaining allegations varies depending upon the nature of the allegation made. As stated previously, 29 U.S.C. § 1113, by its own terms, applies only to actions involving a breach of a fiduciary's duties under ERISA. None of the remaining parts of ERISA contain limitation on actions provisions. Thus, the Court must resort to the most analogous state statute of limitation. *Jenkins v. Local 705 International Brotherhood of Teamsters,* 713 F.2d 247, 253 (7th Cir.1983); *Livolsi v. City of New Castle, Pa.,* 501 F.Supp. 1146, 1151 (W.D.Pa.1980).

■ With respect to those claims against both United Way and the Society

---

6. Limitation of actions

(a) No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date (A) on which the plaintiff had actual knowledge of the breach or violation, or (B) on which a report from which he could reasonably be expected to have obtained knowledge of such breach or violation was filed with the Secretary under this subchapter;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach of violation.

which appear to allege that either one or both Defendants did not comply with the terms of the pension plan, those claims sound in contract. *Id.* The applicable statute of limitation, then, for such claims is O.R.C. § 2305.06 which provides that "an action upon ... a contract ... shall be brought within 15 years after the cause thereof accrued." The Court notes, however, that Plaintiff only appears to be alleging that the Defendants have breached the terms of the pension plan which was initiated in July of 1976. Clearly conduct occurring prior to that date cannot be construed as a breach of that pension plan. Should Plaintiff be attempting to allege that Defendant Society also breached the terms of the prior pension plan, then, claims against the Society which accrued 15 years before the filing of this action on August 20, 1981, would be barred.

Finally, Plaintiff is alleging that both Defendants have discriminated against him in violation of 29 U.S.C. § 1140. To the extent Plaintiff is alleging violations of ERISA statutory provisions, the Court finds ORC § 2305.07 to be the controlling statute of limitations. This section provides, "an action ... upon a liability created by statute ... shall be brought within six years after the cause thereof accrued." ORC § 2305.07. There is, however, a further limitation on Plaintiff's allegations that are properly characterized as violations of ERISA. This limitation stems from the fact that the ERISA provisions did not take effect until January 1, 1975. 29 U.S.C. § 1144(a).

In short, then, the United Way cannot be liable for alleged ERISA statutory violations prior to July, 1976, because it was not plan administrator prior to that date and because no other basis for its liability or responsibility for conduct of the Society prior to that date has been alleged. The Society, on the other hand, may only be held accountable for ERISA statutory violations occurring after January 1, 1975, the effective date of these provisions.

In summary, the Court finds that the ambiguity of the exact nature of the claims made by Plaintiff renders it impossible for the Court to definitively state at this time what claims are barred by what statute of limitations or by other practical considerations such as the fact that the present pension plan did not come into existence until July of 1976. The Court has, however, attempted to identify the possible controlling factors on the permissible claims Plaintiff may raise in the present proceeding.

Within 14 days from date of receipt of this Decision, Plaintiff's counsel will prepare and file with this Court, with service upon opposing counsel, an Amended Complaint which, while conforming to this Decision, will also clearly and specifically set forth, in unambiguous fashion, the exact nature of the claims being made by the Plaintiff against each Defendant.

Following receipt of this Amended Complaint, the Court will convene a conference call to discuss further procedures, including the setting of a trial date and other relevant dates.