Richard N. COWDEN, Plaintiff,

v.

**MONTGOMERY COUNTY SOCIETY FOR CANCER CONTROL, et al.,**
**Defendants.**

No. C–3–81–436.

United States District Court,
S.D. Ohio, W.D.

May 8, 1986.

**2.** See Footnote 1.

James M. Moore, Cincinnati, Ohio, for plaintiff.

Margo Evans, Dayton, Ohio, for defendant.

DECISION AND ENTRY SUSTAINING DEFENDANT SOCIETY'S MOTION FOR AWARD OF ATTORNEY FEES (DOC. # 41); ATTORNEY FEES AWARDED AGAINST PLAINTIFF AND PLAINTIFF'S COUNSEL; HEARING TO BE HELD TO DETERMINE PLAINTIFF COWDEN'S ABILITY TO PAY AN AWARD OF ATTORNEY'S FEES AND TO CONSIDER AMOUNT OF SANCTIONS AGAINST PLAINTIFF'S COUNSEL; CONFERENCE CALL SET TO CHOOSE DATE FOR HEARING

RICE, District Judge.

Plaintiff Cowden voluntarily moved to dismiss the instant case, with prejudice, midway through the presentation to the Court of his case in chief. Defendant Montgomery County Society for Cancer Control (Society) has filed a Motion for Award of Attorney Fees. (Doc. # 41). Specifically, Society seeks $23,026.06 from Plaintiff and from Plaintiff's counsel, a sum representing that portion of its attorney's fees incurred since January 24, 1984, the date of this Court's ruling upon Society's Motion for Summary Judgment.

I. *Attorney's Fees Against Plaintiff Under Section 1132(g).*

Defendant's Motion for Fees is filed pursuant to 29 U.S.C. § 1132(g)(1), which provides in pertinent part:

> In any action under this subchapter ... by a participant, beneficiary or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

The Sixth Circuit has set out the following guidelines for District Courts to apply when deciding whether to grant attorney's fees under Section 1132(g). Five factors are mentioned: (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or to resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions. *Secretary of Department of Labor v. King,* 775 F.2d 666, 669 (6th Cir.1985).

In the typical case, this Court would be reluctant to consider an award of attorney's fees against a plaintiff who had pursued a grievance under ERISA. Indeed, given Plaintiff's voluntary dismissal of this action during the presentation of his evidence, it might appear that the merits of his lawsuit were never reached. This is not, however, a case where Plaintiff was simply in error or was simply unable to prove his case under ERISA. *See Carpenters Southern Cal. Admin. Corp. v. Russell,* 726 F.2d 1410, 1416 (9th Cir.1984). In this case, both Plaintiff and his counsel should have realized, long before trial, that this case was frivolous to the extreme. Instead, even after the Court's January, 1984 decision on Defendant Society's Motion for Summary Judgment, in which Plaintiff and his counsel were explicitly cautioned to reevaluate the merits of this suit, Plaintiff insisted upon dragging Society through two days of trial, only to then voluntarily dismiss the case with prejudice. Based on the application of the *King* factors to these particular facts, the Court finds an award of attorney's fees against Plaintiff to be warranted, in an amount to

be determined at a hearing held subsequent to this decision.

### A. *Absence of Merit in Plaintiff's ERISA Claims/The Relative Merits of the Parties' Positions.*

The first factor enunciated in *King* refers to the "bad faith or culpability" of the party opposed to the motion for attorney's fees. Defendant Society urges that other courts, in construing this factor, have determined that a finding of bad faith is not a prerequisite to an award of attorney's fees. This Court notes, however, that the cases raised by Defendant focus upon bad faith in the context of *plaintiffs* seeking fees under Section 1132(g). *See Landro v. Glendenning Motorways, Inc.,* 625 F.2d 1344, 1356 and n. 18 (8th Cir.1980) (explicitly declining to discuss whether a prevailing defendant may be awarded attorney's fees absent a showing of plaintiff's bad faith); *Miles v. New York Teamsters Pension Fund,* 698 F.2d 593 (2nd Cir.1983), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983); *Ford v. New York Central Teamsters Pension Fund,* 506 F.Supp. 180, 182 (W.D.N.Y.1980); *Baeten v. Van Ess,* 474 F.Supp. 1324, 1332 (D.Wis. 1979).

█ The Court does agree with Defendant, on the other hand, that Plaintiff's "culpability or bad faith" can be considered in this case in tandem with the fifth factor of the *King* inquiry, the "relative merits of the parties' positions." *See Marquardt v. North American Car Corporation,* 652 F.2d 715, 718 (7th Cir.1981). The Court finds that Plaintiff's insistence upon pursuing his ERISA claims all the way to trial, long after he should have realized that his claims under ERISA were frivolous, renders him sufficiently culpable to merit an award of attorney's fees against him.

Two distinct events in the pretrial phase of this case ought to have prompted Plaintiff's realization that he had no evidence to substantiate his claim of pension-related retaliatory discrimination by Defendant Society. The first of those events was the taking of Plaintiff's deposition by Defendant Society and then-Defendant United Way in October, 1981 and February, 1982. Plaintiff's deposition is replete with examples of Plaintiff's absolute inability to provide concrete explanations and examples to support the allegations in the instant lawsuit. The following exchanges between Plaintiff and Defendant Society's counsel are cited merely to illustrate why and how Plaintiff's deposition ought to have demonstrated the wholly unsubstantial nature of his claims:

(1) Plaintiff alleged in his Amended Complaint that the 1977 Employment Agreement which he had entered into with Defendant Society was calculated to prevent him from exercising the pension rights guaranteed to him by ERISA. When asked by Defendant's counsel to explain this allegation, Plaintiff responded with the contention that the Agreement itself was "false." (Cowden deposition, Vol. I, p. 114). When pressed by Defendant's counsel, Plaintiff admitted that the Agreement had not interfered with his right to gain information about his pension, and that, indeed, that the Agreement had nothing to do with the exercise of his rights. *Id.* at 115. The following colloquy then took place:

[MS. EVANS]: That is not what you have said here, Mr. Cowden. What you said in this Complant, you have made the allegations that the terms of your re-employment were calculated to prevent you from exercising your rights.

[PLAINTIFF]: I think so.

[MS. EVANS]: Would you please tell me what you mean by that statement?

[PLAINTIFF]: I think that they did that ... they gave me that to put me in left field and forget about me until 1983. *Id.*

(2) Plaintiff also contended in his Amended Complaint that Defendant Society had failed to contribute the correct amount to his pension plan. *Id.* at 118. Plaintiff then admitted in response to a question by Defendant's counsel that he understood that, whether he made partial pension contributions himself or whether

the contributions were made by Defendant Society, the contribution was fixed at a certain percentage of his salary. *Id.* at 120. The following dialogue then ensued:

[MS. EVANS]: But you said you did understand that the contribution was a percentage of the salary, correct?

[PLAINTIFF]: Mine was a percentage and theirs was a percentage, but they would never tell me. None of 'em would tell me what it was. I still don't know.

[MS. EVANS]: Did you understand that if your salary was reduced that your contribution, the amount contributed to the pension ...

[PLAINTIFF]: No, because ...

[MS. EVANS]: ... would also be reduced?

[PLAINTIFF]: By that time they weren't takin' it out of your salary, so I didn't know what would happen there. By that time it was non-contributory. *Id.* at 121.

(3) Plaintiff alleged in his Amended Complaint that he was terminated by Defendant in December of 1976 due to his requests for information about his pension benefits. As a result of the efforts by Defendant's counsel to learn the basis for Plaintiff's contention, the following dialogue took place:

[MS. EVANS]: Now you testified earlier in your deposition a few months ago that the first you heard of the possibility of the program being phased out and terminating in '77 ... was it a meeting that occurred in April of 1975?

[PLAINTIFF]: Yes. Yes, they called me in shortly after that. I think I told you, Mrs. Davis and A.V. Black and Findley told me I would be terminated after '76.

[MS. EVANS]: And did they explain why that decision was being made?

[PLAINTIFF]: They led me to believe that they would terminate the program, but that wasn't true at all. I asked others in the program and they said nobody had ever said anything to them. They were just shovin' me out.

[MS. EVANS]: At that point, in April of '75, had you requested any information regarding your Pension rights and benefits from the Cancer Society?

[PLAINTIFF]: No. I think if you will look at that meeting ... I told you about the breast case and several others.

[MS. EVANS]: Yes.

[PLAINTIFF]: And they were sayin' that I was practicing medicine, or something. I was just tryin' to tell people what the score was, and they were in trouble. I was tryin' to save lives, and I didn't go out and announce it to somebody outside the profession. All I was tryin' to do ...

[MS. EVANS]: And that is why they terminated you?

[PLAINTIFF]: I'm sure that's part of it. I can't swear exactly, but wouldn't you think that would be a factor?

[MS. EVANS]: You are a better judge of that than I am, but what I'm trying to establish is whether or not the decision to terminate you was in any way related to your attempt to get information about your Pension Plan.

[PLAINTIFF]: Yes.

MR. MOORE: I believe that question had been asked and I think he has attempted to answer it.

(Cowden deposition, Vol. II, at 120–121). While Plaintiff's deposition revealed his displeasure with his employer, it revealed as well the lack of any basis whatsoever for his ERISA claims.

The second key juncture of the pretrial phase, that being this Court's January, 1984 decision on Defendant's Motion for Summary Judgment, further underscores Plaintiff's disregard for the necessity of some legal or factual basis for his belief that his rights under ERISA had been violated by Defendant. Although this Court was explicit in its determination as to which of Plaintiff's claims survived summary judgment, and was equally clear in its warning to Plaintiff to re-consider his position in this litigation, Plaintiff refused or was unable to evaluate the basic frivolousness of his position. A few examples

culled from this Court's decision, together with Plaintiff's subsequent conduct, best illustrate this point:

(1) Plaintiff contended in Count 1 and in Count 2, ¶ 16(B) of his Amended Complaint that Defendant Society had understated his salary level in its periodic reports to the Plan Administrator and that he was harmed because the level of his pension benefits were calculated based upon the alleged understated salary levels. This Court entered summary judgment against Plaintiff on this Count, given his failure to exhaust his administrative remedies. *Cowden v. Montgomery County Society for Cancer Control,* 591 F.Supp. 740, 748 (S.D.Ohio 1984). In conjunction with this claim, this Court noted that Plaintiff's concern was likely to be resolved "if Plaintiff's attorney were to engage in a careful reading of the terms of the pension plan and the built-in protections to Plaintiff's benefits afforded therein *and* if Plaintiff's attorney were to have directed the appropriate inquiries to the proper party as identified in the plan." *Id.* The Court also granted Defendant summary judgment on the issue of whether Defendant had discriminated against Plaintiff by providing false information concerning Plaintiff's compensation and employment status to the Plan Administrator. *Id.* at 749.

Nonetheless, after this decision, Plaintiff repled his allegation as to the false salary information supplied by Defendant Society in Paragraph 10 of his Second Amended Complaint, which he filed subsequent to this Court's January, 1984 decision. (Doc. # 28). Plaintiff also indicated, by means of his Proposed Findings of Fact and Conclusions of Law, that he intended to prevail at trial based on his claim that Defendant Society had furnished false pension benefit information to the Plan Administrator. (Finding of Fact 18, 31, 32, Conclusion of Law 2) (Doc. # 39). Neither this Court's admonition as to exhaustion, nor its indication as to a lack of basis for these contentions deterred Plaintiff from proceeding to trial on a claim which had no foundation.

(2) Plaintiff also contended in his Amended Complaint that Society had discriminated against him by failing to make sufficient and proper contributions towards Plaintiff's pension benefits. This Court granted summary judgment against Plaintiff on this claim, noting not only that Plaintiff had not properly substantiated his claim, but that even if Plaintiff's contention were accepted as true, he would not state a violation of Defendant Society's duty. *Id.* at 748–749. While the Second Amended Complaint does not appear to include this claim, Plaintiff reiterated prior to trial his intention to prevail against Defendant at trial based on this claim. (Proposed Finding of Fact 31, 32, Conclusion of Law 2 and 3).

(3) Plaintiff contended in his Amended Complaint that Defendant Society had failed to give Plaintiff information about his pension benefits to which he was entitled under ERISA. This Court noted, in granting summary judgment against Plaintiff on this claim, that it found "absolutely no basis for the claimed denial of information required by law to be provided" to Plaintiff. *Id.* at 750–51. Plaintiff repled this claim in Sections 13 and 14 of his Second Amended Complaint, and again indicated his intent to prevail at trial against Defendant on this same claim. (Proposed Finding of Fact 29, Proposed Conclusion of Law 3).

(4) This Court found in its decision on the Motion for Summary Judgment that Defendant Society could not be held accountable for any ERISA statutory violations occurring before January 1, 1975, the effective date of the ERISA provisions claimed to have been violated. *Id.* at 755. In Plaintiff's Second Amended Complaint, nonetheless, in Paragraph 14(a), Plaintiff alleged ERISA violations by Defendant Society stretching back to 1964.

Finally, Plaintiff claimed in his Amended Complaint that he had been discriminated against by Defendant with respect to certain benefits, with respect to conditions of

his employment, and with respect to his salary due to his concern about his pension rights. This Court observed that "[h]owever legitimately grounded may be plaintiff's rancor with the Society, the question that unavoidably arises from a reading of the record is, are these claims and allegations properly maintainable as a cause of action under ERISA for 'interference with protected rights' pursuant to 29 U.S.C. § 1140?" *Id.* at 751. The Court found that the record presented a genuine issue of material fact due to the inference which could be drawn from certain events transpiring between Plaintiff and Defendant Society. At the same time, however, the Court included a strongly-worded warning to both Plaintiff and his counsel with respect to their continuation with this litigation:

> Whether these same allegations and asserted factual bases will be sufficient to withstand a motion for directed verdict, is certainly less than apparent at this stage of the proceeding. The Court, therefore, feels compelled to suggest to Plaintiff that it may be prudent to re-examine the allegations that have withstood the Society's Motion for Summary Judgment before further pressing on to the trial. In particular, Plaintiff should give consideration to 29 U.S.C. § 1132(g) which would permit the awarding of attorney fees and costs to Defendants at the discretion of the Court, if for example, Plaintiff's purported ERISA claims should prove to be without merit.

*Id.* at 752.[1]

Unfortunately, neither Plaintiff's deposition nor the January, 1984 decision of this Court deterred Plaintiff from proceeding to trial in September of 1984. On direct examination, no testimonial or documentary evidence of discrimination was produced by Plaintiff. The only evidence of discrimination, indeed, was Plaintiff's subjective feeling that he had been the victim of discrimination. On cross-examination, these subjective conclusions of Plaintiff as to discrimination by Defendant were revealed as nothing more than figments of Plaintiff's imagination. After completion of two days of trial, in the middle of his cross-examination by Defendant, Plaintiff voluntarily dismissed this action, with prejudice.

Plaintiff reiterates in his Memorandum in Opposition the depth of his genuine conviction that he had been discriminated against, in all the manners described above, by Defendant Society. *On this record,* such conviction is no excuse for a total lack of evidence, and cannot excuse Plaintiff's culpability in pursing this frivolous litigation through the second day of trial, only to then dismiss the action voluntarily.

B. *Plaintiff's Ability to Satisfy an Award of Attorney's Fees.*

■ It is undisputed that Defendant incurred substantial costs in the nature of attorney's fees and the like due to Plaintiff's repleading of previously-dismissed claims and then Plaintiff's dragging Defendant through two days of trial based on these claims. Unfortunately, Plaintiff has not addressed, in his Memorandum in Opposition to Defendant's Motion for Fees, his ability to personally satisfy an award of attorney's fees. The Court cannot agree with Defendant's suggestion (Doc. # 50 at 6) that the inferences which can be drawn from Plaintiff's pleadings and conduct indicate his ability to satisfy some or all of the $23,026.06 in fees sought by Defendant. In order for this Court to properly exercise its discretion in setting the amount of fees to be assessed against Plaintiff under Section 1132(g), a hearing must be held upon the issue of Plaintiff's ability to pay.

---

1. After this decision, both Defendant Society and then-Defendant United Way submitted counter-proposals to Plaintiff, offering to forego their claims for attorney's fees against Plaintiff and his attorney in exchange for Plaintiff's voluntary dismissal, with prejudice, of his claims. Plaintiff accepted United Way's offer, and United Way was then dismissed from this case (Doc. # 34). Plaintiff refused to accept Defendant Society's settlement offer. Plaintiff suggests in his Memorandum in Opposition to Defendant's Motion for Fees that he could not settle with Defendant Society given his status as its employee. (Doc. # 45).

### C. *Remaining Factors*

The third factor of the *King* inquiry, whether an award of fees would deter other parties from acting under similar circumstances, and the fourth factor, whether the party requesting fees sought to benefit other ERISA plan participants or to resolve significant questions under ERISA, are not as relevant in this case, where the consideration is whether to award fees to a Defendant. To the extent that a fee award under Section 1132 should be used to deter ERISA plaintiffs from waiting until midway through trial to voluntarily dismiss their frivolous and unfounded lawsuits, this would likely be a case to support such an award of fees. The fourth factor, whether Defendant can be seen as seeking to benefit ERISA beneficiaries or to resolve other significant legal questions under ERISA, is not particularly relevant in this analysis, unless one accepts that Defendant's pursuit of fees is an attempt to resolve legal questions as to entitlement to fees by Defendants under ERISA.

### II. *Attorney's Fees Against Plaintiff's Counsel Under Fed.R.Civ.P. 11.*

■ As amended in 1983, Fed.R.Civ.P. 11 provides in pertinent part:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated.... The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon

the person who signed it, a represented party, or both, an appropriate sanction ... including a reasonable attorney's fee.

To impose a Rule 11 sanction, the district court need only find that the claim asserted had absolutely no merit under existing law, and that no reasonable argument could be advanced to change the law. *Roberts v. Ace Hardware*, 779 F.2d 52 (6th Cir.1985); *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 253–254 (2nd Cir. 1985).

Plaintiff's counsel, James Moore, filed the original Complaint in this case in 1981. Mr. Moore has represented Plaintiff throughout this litigation. At the time that the Complaint was filed, and at the time that Plaintiff was deposed in late 1981 and early 1982, the version of Rule 11 then in effect contemplated sanctions only when there was a showing of bad faith, and the only proper inquiry was the subjective belief of the attorney at the time the pleading was signed. *Eastway Construction Corp. v. City of New York*, 762 F.2d at 253. The 1983 amendment to Rule 11, as quoted above, is in obvious contrast to its predecessor. As Defendant Society seeks to recover from counsel under Rule 11 the portion of its fees which it incurred subsequent to January, 1984, the date of this Court's summary judgment decision, the conduct of Plaintiff's counsel during the period of time relevant to Defendant's motion must be considered under the amended and strengthened Rule 11.

The Court has already examined, in some detail, the two distinct pre-trial milestones (Plaintiff's deposition and this Court's summary judgment decision) and Plaintiff's conduct at trial prior to his voluntary dismissal of same. See Part I, Section A of this opinion. Obviously the discovery deposition of Plaintiff, while it occurred prior to the 1983 amendment to Rule 11, is relevant with respect to the approximate time during the pretrial proceedings when Plaintiff's counsel undoubtedly realized the frivolity of this matter. Even assuming, *arguendo*, that Plaintiff's counsel did not realize that this matter was frivolous from the beginning, he should have realized it no later than the onset of the discovery depo-

sitions. At that time, it should have become apparent to counsel that there was no factual basis whatsoever for Plaintiff's claims. At the latest, however, Plaintiff's counsel should have realized after the Court's decision upon Defendant's Motion for Summary Judgment that this case was frivolous to the extreme.

As discussed *supra,* this Court strenuously and repeatedly advised counsel, in its January, 1984 decision, to re-examine what remained of the allegations before proceeding to trial on the remainder of Plaintiff's ERISA claims. Plaintiff's counsel was directed to prepare an unambiguous Second Amended Complaint, which clearly and specifically set forth the nature of each of Plaintiff's claims against the then two Defendants. *Cowden,* 591 F.Supp. at 755. Plaintiff's counsel, however, signed his name to a Second Amended Complaint which restated in somewhat more limited fashion several of the claims already dismissed by the Court. On the eve of trial, Plaintiff's counsel signed his name to Plaintiff's Proposed Findings of Fact and Conclusions of Law. This pleading, as discussed *supra,* indicated that it was Plaintiff's intent to prevail at trial largely upon claims which had already been dismissed by the Court for lack of factual basis.

To the extent that Plaintiff intended to prove at trial those ERISA claims which had barely survived this Court's summary judgment decision, the cross-examination of Plaintiff at trial indicated that there was nothing more to Plaintiff's claims than his subjective and abiding belief that he had been discriminated against. This is not enough to avoid the assessment of fees against Plaintiff under Section 1132(g), nor is it sufficient to avoid an assessment of attorney's fees under Rule 11 against Plaintiff's counsel, who signed pleadings in this case despite the absolute lack of merit under existing law for these claims and the absence of a reasonable argument that the law could be changed to support them. The amount of sanctions against Plaintiff's counsel, which will not be minimal, will be the subject of oral argument during the hearing to be conducted on Plaintiff Cowden's ability to pay attorney's fees.

### III. *Summary*

In conclusion, application of the five factors set forth in *King* firmly persuades this Court that Plaintiff Richard Cowden should be held liable for Defendant Society's post-January, 1984 attorney's fees, in an amount commensurate with his ability to pay. Attorney's fees are also to be assessed under Rule 11 against Plaintiff's counsel, James Moore. Both Plaintiff's ability to pay, and the appropriate amount of sanctions against Plaintiff's counsel, will be discussed at the hearing. A telephone conference call will be held with counsel on Tuesday, May 20, 1986, at 4:30 p.m., for the purpose of setting a date for the hearing.

Following this Court's judgment in setting an amount of Defendant's attorney fees to be borne by Plaintiff Cowden, counsel may choose to negotiate and settle this Court's decision in that regard. However, only fees and costs ordered to be paid by Plaintiff Cowden are to be the subject of such negotiation. The Rule 11 sanction imposed by this Court against Plaintiff's counsel may not be similarly become the subject of negotiation and settlement between counsel.