**Albert TURNER, Plaintiff,**

v.

**RETIREMENT PLAN OF MARATHON OIL COMPANY, etc., et al., Defendants.**

**No. C 83–583.**

United States District Court, N.D. Ohio, W.D.

April 9, 1987.

Stuart M. Rudick, Berkley, Rudick & Chernikov, Detroit, Mich., for plaintiff.

Rolf H. Scheidel, Shumaker, Loop & Kendrick, Toledo, Ohio, for defendants.

## OPINION AND ORDER

WALINSKI, Senior District Judge.

This cause is before the Court on plaintiff's partial motion for summary judgment, defendants' motion for summary judgment, and several oppositions and replies thereto. The Court heard oral arguments on November 7, 1986. Post-hearing briefs were filed thereafter.

This action is brought by plaintiff under general contract and tort law theories of recovery and the Employment Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq.* The case was filed in a Michigan state court, removed to the United States District Court for the Eastern District of Michigan, and transferred to this Court pursuant to a motion for change of venue. Jurisdiction is predicated upon 28 U.S.C. §§ 1331 and 1332.

### FACTS

Plaintiff was hired by Aurora Gasoline Company ("Aurora") on November 3, 1949. Plaintiff initially worked at Aurora's Detroit refinery as an hourly employee. He was governed by a pension plan entitled "Security at Retirement" offered to the

hourly rated employees of Aurora. Plaintiff currently receives a small monthly pension payment with respect to his hourly service from 1949 to 1961 pursuant to that plan.

On June 1, 1959, Marathon Oil Company ("Marathon") through its predecessor, Ohio Oil Company, acquired the stock of Aurora. (R.D. Cooley Aff. ¶ 11). Thereafter, hourly bargaining unit employees including plaintiff were represented by Local No. 283 of the International Brotherhood of Teamsters ("Teamsters"). As of January 1, 1962, plaintiff was covered by the Teamsters Central States Pension Plan. (Cooley Aff. at ¶ 17). With respect to plaintiff's hourly service from 1962 to 1971, plaintiff receives no pension payment and has no rights under the Teamsters plan. (Turner Dep. 1 at 105).

In April 1971, plaintiff was interviewed by Jim Stahl and promoted to a salaried position as a shift foreman. (Cooley Aff. at ¶¶ 20–21; Turner Dep. 1 at 10, 25). At this time, plaintiff's coverage began under defendant Retirement Plan of Marathon Oil Company ("Plan"). As of October 1, 1981, plaintiff retired from Marathon.

Since his retirement, plaintiff has received a monthly pension check from the Plan based on his years as a salaried employee from 1971 to 1981. Plaintiff brings this action against the Plan and R.D. Cooley,[1] Administrator of the Plan ("Plan Administrator"), as defendants. Plaintiff states that he is entitled to a larger monthly pension because he was only credited under the Plan with the ten-and-a-half years he worked as a salaried employee, despite the fact that he also worked at the same facility for Aurora for approximately ten years and for Marathon and its predecessor as an hourly employee for about eleven years.

Several theories of recovery are maintained by plaintiff in his second amended complaint. In Count I, plaintiff claims that defendants breached an oral contract made when plaintiff was promoted wherein the parties agreed that plaintiff's total years of service would be used to compute retirement benefits. In Count II, plaintiff sets forth a claim for promissory estoppel. In Counts III and IV, plaintiff alleges violations of law under the concepts of misrepresentation and negligence. Essentially, plaintiff alleges a denial of increased benefits and payment of pensions in an inconsistent manner in violation of ERISA.

Marathon's Plan is an "employee benefit plan" within the meaning of 29 U.S.C. § 1002(3). R.D. Cooley is an "administrator" within the meaning of 29 U.S.C. § 1002(16)(A). Marathon has maintained the Plan in various forms at its facilities around the country since 1936. (Cooley Aff. at ¶ 5). The Plan formulas used to calculate the amount of pension payment refer to years of "plan participation." (*Id.* at ¶¶ 6–10). The amount of payment is based in part on an employee's period of participation in the Plan. (*Id.* at ¶ 6). According to Article II (A)(3) of the Plan's summary description, an employee of Marathon Oil Company or another participating employer is eligible to become a member of the Plan provided he is not participating in another retirement plan towards which a participating employer makes contributions. (Retirement Plan of Marathon Oil Company attached to Merzbacher Aff. at Ex. 1).

From 1971 until his retirement in 1981, plaintiff was a salaried employee and a participant in the Plan. (Cooley Aff. at ¶ 23). Throughout that period, plaintiff was sent an annual benefit statement. (*Id.* at ¶ 24). Those statements reflected only plaintiff's salaried service years as the basis for computing his pension. (*Id.*).

When plaintiff received his promotion out of the bargaining unit in 1971 to a salaried position, he was told that he had "nothing to lose, everything to gain." (Turner Dep. 1 at 29). It was plaintiff's understanding at the time that he would get credit for twenty-and-a-half years under the Teamsters plan (since Teamsters

---

**1.** By Order dated March 19, 1986, this Court dismissed C.E. Merzbacher and substituted R.D. Cooley as defendant Administrator of the Plan.

had recognized his time with Aurora). (Turner Dep. 1 and 29, 30, 100). About a year or two after his promotion, plaintiff admits that he became aware that the amount of his pension from the Plan would not include credit for his twenty plus years of hourly bargaining unit service. (*Id.* at 76; Turner Dep. 2 at 40, 58). Plaintiff maintains that he even asked to return to the bargaining unit when he discovered this fact but that his request was denied. (Turner Dep. 2 at 58).

Although plaintiff knew as early as 1972 or 1973 that his hourly years of service would not be credited under the Plan, plaintiff did not register any complaint pursuant to the Plan's claims procedure until he sought through his attorney in 1981 to claim a larger pension. At that time, plaintiff's request was handled under the claims procedure and the Plan Administrator denied his claim. On December 17, 1982, plaintiff filed his complaint in this action.

Originally, plaintiff sought damages regarding a pension for all of his years as an employee for Aurora and Marathon. However, pursuant to the parties' stipulated motion for partial dismissal with prejudice, the Court on November 7, 1986, dismissed all of plaintiff's claims for retirement benefits with respect to the period after the date Marathon acquired Aurora's stock. Thus, plaintiff's only remaining claim for an increased pension credit under the Plan is with respect to his hourly employment for Aurora from 1949 to 1959.

Aurora had one retirement plan for hourly rated employees and another, the Aurora Pension Trust Agreements Number One and Two ("Aurora salaried plan"), which covered salaried employees of Aurora. (Defendants' Responses to Plaintiff's Request for Admissions, filed April 21, 1986, at 10). In viewing the evidence most favorably toward plaintiff for purposes of summary judgment, the Court finds that the Aurora salaried plan credited an employee's previous service as an hourly worker in calculating pensions.

When Aurora's stock was purchased in 1959 by Marathon, some salaried employees already participating in the Aurora salaried plan became salaried employees of Marathon and began participation in the Plan. The terms of the acquisition specified particular pension treatment for these salaried employees, including Chester Goike and William Turner. (Attachment 22A to Plaintiff's Motion for Partial Summary Judgment). Specifically, Marathon adopted the years these employees were credited under the Aurora salaried plan, which included their hourly service. (*Id.*). Because plaintiff was still in the bargaining unit at the time of the acquisition and for more than eleven years thereafter, he never participated in the Aurora salaried plan and was not in the group whose hourly service credits transferred to the Plan. (*Id.*).

Although plaintiff received a small monthly pension amount for his years as an hourly employee with Aurora, he claims that those years should also be credited under the Marathon Plan. Plaintiff bases this claim, first, on his contention that he is entitled to receive the same credit that Aurora salaried employees participating in the Aurora salaried plan received at the time of the stock acquisition. Second, plaintiff asserts that he was not told that the Aurora salaried policy (of crediting hourly employment) would change to the Plan (which does not credit years of bargaining unit service) and thus relied to his detriment in remaining employed at Marathon and later accepting the promotion to salaried status. Both parties seek summary judgment.

## DISCUSSION

Rule 56, Fed.R.Civ.P., directs the disposition of a motion for summary judgment. In relevant part Rule 56(c) states:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The Court's function in ruling on a motion for summary judgment is to determine

if any genuine issue exists for trial, not to resolve any factual issues, and to deny summary judgment if material facts are in dispute. *United States v. Articles of Device*, 527 F.2d 1008, 1011 (6th Cir.1976); *Tee-Pak, Inc. v. St. Regis Paper Co.*, 491 F.2d 1193 1105 (6th Cir.1974). Further, "[i]n ruling on a motion for summary judgment, the evidence must be viewed in a light most favorable to the party opposing the motion. *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319, 1324 (6th Cir.1983). To summarize, summary judgment is only appropriate when no genuine issue of material fact remains to be decided, and when the undisputed facts, viewed in a light most favorable to the non-moving party, entitle the movant to judgment as a matter of law. *Smith v. Pan Am World Airways*, 706 F.2d 771, 773 (6th Cir.1983).

A principle purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Rule 56(e) places responsibility on the party against whom summary judgment is sought to demonstrate that summary judgment is improper, either by showing the existence of a material question of fact or that the underlying substantive law does not permit such a decision. In relevant part the provision states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Rule 56(e), Fed.R.Civ.P. Rule 56(e) requires the non-moving party to go beyond the pleadings, and by affidavits, depositions, answers to interrogatories, or admissions on file, designate specific facts showing a genuine issue for trial. *Celotex Corp. v. Catrett*, 106 S.Ct. at 2553.

Plaintiff seeks summary judgment on grounds that there is no genuine issue of fact in dispute and that he is entitled as a matter of law to have the years he was employed by Aurora credited as Plan participation. Defendants seek summary judgment for several reasons. First, defendants maintain that plaintiff's action is barred by the applicable statute of limitations and is unenforceable by reason of laches. Next, defendants contend that because the Plan Administrator's decision to deny plaintiff's claim was not arbitrary, capricious or contrary to law, defendants should be granted summary judgment on the merits. Finally, defendants assert that plaintiff's claims of breach of contract, misrepresentation negligence and promissory estoppel are preempted by ERISA and are without merit as a matter of law. For the reasons which follow, the Court finds defendants' motion for summary judgment well taken.

### I. STATUTE OF LIMITATIONS AND LACHES

■ A statute of limitations runs from the time a claim accrues and causes of action accrue when a wrong or breach occurs. For some types of claims an action accrues, at the latest, when a party discovers that his rights have been violated. *See Au Rustproofing Center v. Gulf Oil Corp.*, 755 F.2d 1231, 1237 (6th Cir.1985) (in a fraud action under Ohio law, no more than a reasonable opportunity to discover the fraud is required to start the period of limitation).[2] "With respect to determining when a person discovers, or knows or has reason to know of, his cause of action so as to commence the running of the limitation period, ... it is not necessary that the person recognize that he has suffered invasion of a legal right. Nor is running of the limitation period held in abeyance until a person obtains professional assistance to

---

**2.** The parties raise a conflict of law question as to whether Ohio or Michigan substantive law is applicable to plaintiff's state claims. The Court declines to express an opinion on the conflicts question inasmuch as the law of both states is similar on the determinative issues raised by the parties.

help him determine whether he has a cause of action. Rather, the limitation period commences when the person knows of the act which caused his injury and has good reason to believe that the act was improper or done in an improper manner." *City of Huntington Woods v. Wines*, 122 Mich. App. 650, 652, 332 N.W.2d 557 (1983) (citations omitted).

It is undisputed that a year or two years after his April, 1971 promotion, plaintiff discovered that he would not get credit under the Plan for his hourly service. In his first deposition taken July 6, 1983, plaintiff responds as follows:

Q. After you actually transferred to salaried service ... did you have any questions ... about ... salary pension ...?

A. Not right away.

Q. And when was the first time a question of that kind arose?

A. After a year.

Q. And what do you remember happening there?

A. I found out that we weren't going to get the credit for the previous time I had in.

Q. You mean hourly service?

A. Right....

(Turner Dep. 1 at 76). Likewise, in his second deposition taken March 20, 1986, plaintiff responds as follows:

Q. Within a year of that job change to salary you became aware that you were not being credited with hourly service?

A. About a year to two years, somewhere in there.

Q. And you wrote a letter to your boss ...?

A. Yes.

Q. What do you recall about that?

A. Well, I wrote him saying that I was very disappointed to find out that my time wasn't covered and I wanted to go back into hourly and their answer to that was it's too late.

(Turner Dep. 2 at 58). Thus, plaintiff had actual knowledge of the alleged wrongdoing by at least April 1973, two years after his promotion.

■ The limitations period began to run when plaintiff knew the effect of the Plan upon his hourly service. Defendants' denial of additional years' credit effectively occurred at that time. The Court finds no merit in plaintiff's legal arguments that notice to plaintiff in or around 1973 served merely as an anticipatory repudiation and that plaintiff did not need to bring suit until pension payments began. Looking to analogous employment discrimination cases, the "proper focus is on the time of the [wrongful] act, not the point at which the *consequences* of the act become painful." *Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981) (action under 42 U.S.C. § 1983 by nontenured public education administrators wherein the Supreme Court held that the limitations period began to run upon receipt of notice of termination, not when the employees' appointments ended). *See also Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (applicable limitations period began to run when the plaintiff was denied tenure, rather than on the date his employment terminated). Accordingly, the Court finds that the limitations period within which plaintiff should have commenced his action began as of April 1973.

The Court need not decide whether the Ohio, Michigan or ERISA statute of limitations is applicable.[3] Whichever limitation period is applied, plaintiff was required to file this action within six years of April 1973, the approximate date plaintiff's cause of action accrued. Plaintiff did not file his complaint on or before April 1979. Rather, this matter was initiated on December 17, 1982. Because plaintiff brought his law-

---

**3.** The Ohio limitations period is six years for oral contract claims, O.R.C. § 2305.07, and four years for tort actions. O.R.C. § 2305.09(C). Michigan also has a six-year limitations period for claims sounding in contract, Mich.Stat.Ann. § 27A.5807 [M.C.L.A. § 600.5807], a three year limit for tort claims, Mich.Stat.Ann. § 27A.5805 [M.C.L.A. § 600.5805] and six years for other personal actions. Mich.Stat.Ann. § 27A.5813 [M.C.L.A. § 600.5813]. ERISA provides a three or six year limitations period for breach of fiduciary responsibilities. 29 U.S.C. § 1113.

suit more than three years after the longest applicable limitations period had run, his claims as set forth in Counts I through IV are barred.

■ Similarly, the equitable doctrine of laches bars plaintiff's claims. The laches doctrine prevents inequities caused by the passage of time due to a lack of diligence in asserting claims. "A court should focus upon the length of the delay, the reasons therefore, how the delay affected the defendant, and the overall fairness of permitting the assertion of the claim." *Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800, 806 (8th Cir.1979), *cert. denied*, 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980).

In the case *sub judice*, plaintiff delayed filing a complaint for over nine years from the time his cause of action arose. No legitimate reason is offered for such dilatory action. In fact, plaintiff indicated in or around 1978 that he would wait until he retired and then sue for the years' credit allegedly due. (Penn Dep. at 38–41). Further, the Court finds that defendants have been prejudiced by plaintiff's inexcusable delay. Prejudice to a defendant may take the form of loss of evidence and the unavailability of witnesses which diminishes a defendant's chance of success. *Goodman*, 606 F.2d at 808, n. 17. "[I]f the delay is lengthy, prejudice is more likely to have occurred and less proof of prejudice will be required." *Id.* at 807. Plaintiff's delay was lengthy. Evidence has been lost, as indicated by the lack of Aurora records concerning salaried pensions. (Cooley Aff. at ¶ 13). Moreover, the effects of plaintiff's delay are demonstrated by his difficulty during depositions in recalling names, dates and details surrounding alleged representations. (Turner Dep. 2 at 14–19). On this basis, the Court finds that plaintiff's delay in bringing his claims prejudiced defendants. Plaintiff's claims are therefore barred by the doctrine of laches. Accordingly, defendants are entitled to summary judgment.

## II. THE PLAN ADMINISTRATOR'S DECISION

Even assuming *arguendo* that plaintiff brought his action in a timely manner, the decision of the Plan Administrator to deny increased benefits may be overturned by the Court only if it "was arbitrary, capricious, in bad faith, erroneous as a matter of law or unsupported by substantial evidence." *Blakeman v. Mead Containers*, 779 F.2d 1146, 1149 (6th Cir.1985). *See also Moore v. Reynolds Metals Co. Retirement Program for Salaried Employees*, 740 F.2d 454, 457 (6th Cir.1984), *cert. denied*, 469 U.S. 1109, 105 S.Ct. 786, 83 L.Ed.2d 780 (1985); *Rhoton v. Central States Sutheast and Southwest Areas Pension Fund*, 717 F.2d 988, 990 (6th Cir. 1983). "Generally, speaking, ... [administrators] are knowledgeable of the details of a trust fund (both its purpose and operation), and thus they are in a position to make prudent judgments.... Courts are extremely reluctant to substitute their judgment for the judgment of [administrators], and will do so only if the actions of the [administrators] are not grounded on any reasonable basis." *Blakeman*, 779 F.2d at 1150 (quoting *Ponce v. Construction Laborers Pension Trust*, 628 F.2d 537, 542 (9th Cir.1980)).

■ The Plan Administrator in the case *sub judice* must administer the Plan according to its terms, interpret its provisions, maintain records and related documents, communicate with participants, supervise benefit determinations and decide on the utilization of contributed funds. (Merzbacher Aff. at ¶ 4). The Plan Administrator reviewed plaintiff's eligibility for benefits, his "years of service" with Marathon for purposes of determining the amount of his benefits under the Plan, and the calculation of his entitlement. (*Id.* at ¶ 8). Plaintiff has failed to present any evidence that the Plan Administrator's decision not to credit plaintiff's years with Aurora as participation despite plaintiff's claims of detrimental reliance was arbitrary, capricious or in bad faith.

Further, although the lack of credit for hourly service may seem distinctly unfair to plaintiff, it is a reasonable interpretation of the Plan. Only participating years are included in pension calculations. Plaintiff

was not eligible to become a participant while working for another employer. Likewise, refusing to credit plaintiff's hourly Aurora years was a reasonable consequence of the terms of the stock acquisition. If plaintiff had been salaried with Aurora at the time of the acquisition, he would have been in the same category as Chester Goike and William Turner. Plaintiff's alleged reliance on defendants' treatment of employees in different positions was misplaced and is *not* a factor the Plan Administrator need base his decision upon. Nor was plaintiff's mistaken understanding that the Plan would include the years credited by the Teamsters a factor to which the Plan Administer must give credence. "The reliance of a party seeking to assert estoppel must be reasonable." *Teamster's Local 348 Health and Welfare Fund v. Kohn Beverage Company,* 749 F.2d 315, 319 (6th Cir.1984), *cert. denied,* 471 U.S. 1017, 105 S.Ct. 2024, 85 L.Ed.2d 305 (1985). Plaintiff's reliance in these regards was clearly not reasonable. Thus, the Court finds the Plan Administrator's decision to deny increased benefits neither contrary to law nor unsupported by substantial evidence. Defendants would therefore be entitled to summary judgment on plaintiff's ERISA claims.

### III. PRE–EMPTION AND THE MERITS OF PLAINTIFF'S STATE CLAIMS

■ Even if plaintiff's state law claims were not barred by laches and an applicable statute of limitations, the question of preemption by ERISA arises. Clearly, plaintiff's common law contract actions for breach of an oral agreement, for recovery under promissory estoppel, and for detrimental reliance are preempted by ERISA. *Blakeman,* 779 F.2d at 1151. ("It is clear that common law causes of action for breach of contract are preempted by ERISA."). As for plaintiff's negligence and misrepresentation causes of action, in determining whether they too are preempted by ERISA, the inquiry is "whether the conduct challenged was part of the administration of an employee benefits plan." *Id.* (quoting *Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1505 (9th Cir.1985)). Plaintiff's allegations that defendants misrepresented the terms of the Plan at the time of plaintiff's 1971 promotion or negligently failed to explain plaintiff's pension rights are clearly part and parcel of administering the Plan. Thus, these common law tort claims are also preempted. In light of the foregoing, defendants would be granted summary judgment on plaintiff's state law claims because they are preempted by ERISA. A disposition by the Court on the merits of these state claims would therefore be unnecessary.

Accordingly, it is

ORDERED that defendants' motion for summary judgment is granted.

FURTHER ORDERED that plaintiff's motion for partial summary judgment is denied.

FURTHER ORDERED that this cause is dismissed.