**Danny MEADE, Plaintiff,**

v.

**PENSION APPEALS AND REVIEW COMMITTEE; Ohio Laborers' Fringe Benefit Programs: Laborer's District Council and Contractors Pension Fund of Ohio, Defendants.**

No. C2–88–198.

United States District Court,
S.D. Ohio, E.D.

April 2, 1991.

John Keith Everett, Columbus, Ohio, for plaintiff.

Randall Scott Rabe, Columbus, Ohio, for defendants.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This matter is before the Court pursuant to the motion filed by the plaintiff on March 31, 1989, and the cross motion filed by the defendant on May 15, 1989, for summary judgement pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff initiated this action on January 14, 1988 in the Franklin County Court of Common Pleas, seeking relief under 29 U.S.C. Section 1132(a). Pursuant to 28 U.S.C. Section 1441(a) and 28 U.S.C. Section 1446, the instant action was removed to this Court for its determination. For the reasons stated herein, the plaintiff's motion is hereby DENIED and defendant's cross motion is hereby GRANTED.

### FACTS

Plaintiff, Danny Meade was employed as a general laborer by one or more employers, all of whom were participants in the Ohio Laborers' Pension Fund. During the course of his employment, each general laborer made contributions to the Pension Fund on his or her behalf. Although the cause is unknown, the plaintiff apparently suffered an injury to his lower back area in August of 1979. It is based on this injury that plaintiff claims that he is entitled to the "total and permanent" disability benefits provided under the terms of the Laborers' District Council and Contractors Pension Fund of Ohio (The "Pension Plan").

On May 27, 1981, plaintiff submitted an application to the defendant for "total and permanent" disability benefits under the terms of the pension plan. In support of his application, the plaintiff submitted a notice from the Social Security Administration, indicating that he had been declared a qualifying recipient for Social Security Benefits. Upon the defendant's request, the plaintiff submitted an additional medical report of his then attending physician, Dr. F.W. Elder. Contrary to the plaintiff's assertion that he was "permanently" disabled, Dr. Elder's examination report indicated that plaintiff was only "temporarily" disabled. Such a conclusion of fact apparently disqualified the plaintiff for this aspect of benefits under the Pension Plan. However, to assure the accuracy of its decision, the defendant requested that the plaintiff submit to an additional examination by a different physician. Plaintiff agreed and was examined by Dr. John S. Wolfe. Based upon his examination, Dr. Wolfe concluded that the plaintiff in fact had very little disability and that he could return to work without any restriction.

On the basis of the reports of Dr. Elder and Dr. Wolfe, the defendant rejected the plaintiff's application for "Total and Permanent Disability Benefits", notifying him by letter dated October 1, 1981. Obviously dissatisfied with this result, Mr. Meade appealed the decision to the Pension Appeals and Review Committee ("The Committee") who in turn upheld the defendant's initial determination. On January 19, 1982, the plaintiff was notified by letter of the Committee's decision to support the earlier determination.

For approximately three years following the Committee's determination, the plaintiff took no action to challenge the defendant's decision. However, on or about December 5, 1985, Mr. Meade initiated a re-application with the Pension Fund, again seeking "Total and Permanent Disability Benefits" stemming from the injury allegedly suffered in August of 1979.[1]

In support of his re-application, Meade submitted a medical report of his then attending physician, Dr. Paul J. Matkra. Dr. Matkra's initial report of April 11, 1986 indicated that the plaintiff did not become "totally and permanently disabled" until 1984. However, on May 6, 1985, Dr. Matkra forwarded a letter to the defendant, stating generally that a clerical error had occurred in the report and that the plaintiff

---

1. The plaintiff's 1985 application was received by the defendant on or about April 8, 1986.

was "totally and permanently disabled" in 1979 rather than 1984.[2]

Based on the nature of this additional evidence, the defendant concluded that the information was unreliable, or at best was "inconclusive" on the issue of whether Meade was "totally and permanently disabled" in 1979.[3] Accordingly, the defendant denied the plaintiff's 1985 re-application for disability benefits.

Plaintiff again appealed the decision to the Pension Appeals and Review Committee. Upon request by the Committee, the plaintiff submitted to yet another physical examination to be conducted by Dr. Kackley, a physician selected by the defendant. Based upon his personal examination of the plaintiff, a medical narrative given by the plaintiff and his medical records, Dr. Kackley concluded that the plaintiff was "totally and permanently disabled" in 1979. Despite this conclusion, The Committee upheld the initial decision, questioning Dr. Kackley's ability to conclude the date in which the plaintiff had originally become "totally and permanently disabled".[4]

Plaintiff filed the instant action on January 14, 1988 in the Franklin County Court of Common Pleas seeking relief under 29 U.S.C. Section 1132(a) of the Employee Retirement Income Security Act ("ERISA") and damages for breach of contract under general principles of state law. Pursuant to 28 U.S.C. Section 1441(a) and 28 U.S.C. Section 1446, the action was removed for determination by this Court. The plaintiff has moved for summary judgment on the issue of liability and the defendant has filed a cross motion on the issue in response.

## STANDARD OF REVIEW

In considering this motion, the Court is mindful that the standard for summary judgment "mirrors the standard for a directed verdict under [Rule 50(a)], which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) citing *Brady v. Southern Ry. Co.*, 320 U.S. 476, 479–480, 64 S.Ct. 232, 234–235, 88 L.Ed. 239 (1943). Thus, the Supreme Court concluded in *Anderson* that a judge considering a motion for summary judgment must "ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair minded jury could return a verdict for the plaintiff on the evidence presented." 477 U.S. at 252, 106 S.Ct. at 2512.

■ Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In essence, the inquiry is whether the evidence presented a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

Such an inquiry necessarily implicates the evidentiary standard of proof that would apply at the trial on the merits. As a result, the Court must view the evidence presented through the prism of the sub-

---

2. The court is in a quandary as to how Dr. Matkra could have claimed that a clerical error could have occurred in the original report in light of the fact that it was handwritten by the physician himself.

3. Apparently, defendant felt it had sufficient reason to question the validity of the follow up letter based on the manner in which it was phrased by Dr. Matkra. The letter stated that the "onset" of plaintiff's condition was 1979 and not that the plaintiff had "been totally and per-

manently disabled" since 1979. *See*, Defendant's exhibit M (Follow up letter of Dr. Matkra).

4. The defendant's suspicion was confirmed during the course of defendant's deposition of Dr. Kackley. Dr. Kackley himself states generally that it was medically impossible to pinpoint the date in which the plaintiff became totally and permanently disabled. *See*, Defendant's Exhibit P, (Deposition of Dr. Desmond D. Kackley).

stantive evidentiary burden. Rule 56(e) therefore requires that the nonmoving party go beyond the pleadings and by their own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552.

In *Banks v. Rockwell International N. Am. Aircraft Operations*, 666 F.Supp. 1053 (S.D.Ohio 1987) (J. Graham), this district enunciated the importance of granting summary judgments in appropriate situations by stating that: "Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules which are designed to secure the just, speedy and inexpensive determination of every action." *Citing, Celotex Corp.' v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553, (quoting Fed.R.Civ.P. 1) *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

■ Thus, the mere existence of a scintilla of evidence in support of a plaintiff's claim is insufficient—there must be evidence upon which a jury could reasonably find for the plaintiff. Having discussed the Rule 56 standard of review, the Court now turns to the merits.

### ANALYSIS

*I. Plaintiff's Cause of Action and Section 413*

The initial issue presented to this Court for its determination is whether the plaintiff's cause of action is time barred by 29 U.S.C. Section 1113(a)(2), Section 413(a)(2) of the Employment Retirement Income Security Act (ERISA).

Turning to plaintiff's complaint, it alleges that the defendants wrongfully denied him disability benefits that he was entitled to under the terms of the pension plan. Clearly, these allegations assert that the defendant has breached its fiduciary duty in the maintenance and disbursement of funds under the plan, making the applicable statute of limitations 29 U.S.C. Section 1113(a), Section 413(a).[5] *See, Cowden v. Montgomery Co. Soc. For Cancer Control*, 591 F.Supp. 740, 754 (N.D.Ohio 1984), *citing, Davidson v. Cook*, 567 F.Supp. 225, 235 (E.D.Va.1983); *Livolsi v. City of New Castle, Pa.*, 501 F.Supp. 1146 (W.D.Pa. 1980).

■ Having determined that 29 U.S.C. Section 1113(a), Section 413(a) applies, it is necessary to determine when the time limitations of the statute began to run. In general, a statute of limitation will begin to run when a cause of action accrues, that being at latest when the plaintiff has knowledge that his rights have been violated. *See, Turner v. Retirement Plan of Marathon Oil Co.*, 659 F.Supp. 534, 538 (N.D.Ohio 1987), *citing, Au Rustproofing Center v. Gulf Oil Corp.*, 755 F.2d 1231, 1237 (6th Cir.1985). Although the plaintiff vehemently argues that the 1981 application and 1985 re-application are wholly independent proceedings, the Court cannot agree. For several reasons, this Court must hold that the statute of limitations began to run in 1982.

First, in 1981, the plaintiff had applied for "total and permanent disability" benefits under the terms of plan with support-

---

**5.** 29 U.S.C. Section 1131 states in pertinent part that:

(a) No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty or obligation under this part, or with respect to a violation of this part after the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or

(B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date (A) on which the plaintiff had actual knowledge of the breach or violation, or (B) on which a report from which he could reasonably be expected to have obtained knowledge of such breach or violation was filed with the Secretary under this subchapter.

ing medical evidence, but such application was categorically rejected by the defendant. Despite this rejection, plaintiff failed to institute a cause of action to challenge the decision of the defendant, but rather made a conscious decision to re-apply for the same disability benefits in 1985. In the opinion of this Court the 1985 re-application indicates, in and of itself, that the plaintiff knew, or at least believed, that the initial determination by the defendant violated his rights under the terms of the pension plan. Therefore, the statute of limitations began to run at that time, in 1982.

There is no doubt that the defendant's determination of the plaintiff's 1985 re-application would have been based on the same set of facts and evidence upon which the rendition of defendant's 1981 decision was based. In considering the 1985 re-application, the defendant would clearly have taken into account the medical evidence presented in support of plaintiff's application in 1981. Contrary to plaintiff's contention, the 1981 application and 1985 re-application cannot be considered wholly independent proceedings, but rather merely a reconsideration on the part of the defendant. Such action cannot be held to renew the plaintiff's cause of action based on an earlier decision of the same set of facts. *Cf., Morgan v. Laborers Pension Trust Fund For N. Cal.*, 433 F.Supp. 518, 525 (N.D.Cal. 1977) ("If this Court were to rule that an applicant's cause of action is renewed each time a pension fund informally re-examines his pension request, pension funds would simply refrain from doing so."); *see also, Mason v. Aetna Life Ins. Co.*, 901 F.2d 662, 664 (8th Cir.1990); *Dameron v. Sinai Hosp. of Baltimore, Inc.*, 595 F.Supp. 1404, 1415 (D.Md.1984).

Finally, if this Court were to adopt the approach suggested by the plaintiff, characterizing each proceeding as independent, such a rule would in effect swallow the statute of limitations itself. By merely re-filing an application for benefits previously denied, one would be able to circumvent the applicable statute of limitations. This would open the door to suits by every person who was previously denied benefits under a pension plan, a policy clearly contrary to the purpose of Section 1113. *See, Morgan*, 433 F.Supp. at 526.

Having determined that the statute of limitations began to run with the Committee's initial denial in 1982, the plaintiff is foreclosed from initiating the instant cause of action. As previously delineated, 29 U.S.C. Section 1113(a)(2), Section 413(a)(2) precludes a cause of action which was instituted more than three years from the time in which the plaintiff had actual or constructive notice that a breach had occurred. The evidence before the court clearly demonstrates that the plaintiff had such actual knowledge of the actions which he claims to consist of a breach of a fiduciary duty insofar as he was written a letter by the defendant, dated October 19, 1982, explaining its decision.

Accordingly, the plaintiff is precluded from maintaining the instant action since he failed to file it within three years of October 19, 1982, the time in which plaintiff had actual knowledge of the defendant's alleged breach of fiduciary duty.

## II. The Board's Decision

■ Even if this Court were to go so far as to assume that the 1981 application and 1985 re-application were in fact two separate proceedings, making this action timely, summary judgment for the defendant must be granted nonetheless. This circuit has consistently held that a court only has authority to overturn the decision of a plan administrator to deny benefits where it was "arbitrary, capricious, made in bad faith, or unsupported by substantial evidence". *See, Daniel v. Eaton*, 839 F.2d 263, 266 (6th Cir.1988); *Blakeman v. Mead Containers*, 779 F.2d 1146, 1149 (6th Cir.1985); *Moore v. Reynolds Metal Co. Retirement Program*, 740 F.2d 454, 457 (6th Cir.1984), *cert. denied*, 469 U.S. 1109, 105 S.Ct. 786, 83 L.Ed.2d 780 (1985).

Plaintiff has consistently pointed out to this Court that the only element that was not fulfilled was the requirement that the plaintiff was "totally and permanently disabled" in 1979. Contrary to plaintiff's as-

sertion, the evidence submitted leads the Court to only one conclusion, that the decision of the board was made reasonably, in good faith and supported by more than a sufficient amount of evidence.

First, the court must acknowledge that the board had before it the medical evidence submitted in support of the 1981 application in considering the 1985 re-application. This evidence in and of itself refuted any assertion of the plaintiff that he had been "totally and permanently" injured since 1979. Not only did his own physician, Dr. Elder, indicate that his disability was merely temporary,[6] but the report of Dr. Wolfe was completely contrary, indicating that the plaintiff had little if any disability at all.[7] Clearly, this overwhelming medical testimony against the plaintiff was taken into account by the board in their re-consideration of plaintiff's 1985 application. Therefore, when the plaintiff re-filed his application in 1985, the burden was on him to refute the medical facts previously established in 1981.

Although the defendant submitted an additional medical report and submitted to an additional physical examination, this Court must say as a matter of law that the board was justified in determining that plaintiff had not met this burden based on this additional evidence. Turning to the report submitted by Dr. Matkra, the board was well within its discretion to question the validity of his initial report and his follow-up letter, in light of the alleged clerical error was based upon a report which itself was handwritten. Although this Court is not suggesting that any impropriety may have occurred, the fact remains that the board was entitled to assess the credibility of the physician and his corrective letter in light of the curious nature which surrounded its arrival. In addition, the defendant's

discretion to question Dr. Kackley's ability to conclude that the plaintiff's disability occurred in 1979 was clearly reasonable for two reasons. Not only had the plaintiff's injury occurred 7 years prior to this examination, but the conclusion of Dr. Kackley was completely unsupported by two separate examinations that had been conducted much closer to the time of the alleged disability.

Based on the nature of the additional medical reports submitted and those which had previously and irrefutably established facts contrary to the plaintiff's claim, the defendant was well within its discretion to deny benefits to the plaintiff. Accordingly, this court holds that the board's decision was made in good faith, in a reasonable manner and supported by sufficient evidence to warrant summary judgment on these grounds as well. Therefore, based upon the plaintiff's failure to file within the prescribed statute of limitations as well as the above stated reasons, the defendant's motion for summary judgment is hereby GRANTED.

## III. Plaintiff's Contract Claims and Pre-emption

■ Plaintiff's second cause of action is based upon breach of contract, fraud, and misuse of funds pursuant to state law. Obviously, plaintiff has failed to recognize that ERISA's pre-emption provision[8] was intended to be interpreted broadly, precluding common law claims based upon breach of contract. See, Firestone Tire & Rubber Co. v. Neusser, 810 F.2d 550, 553 (6th Cir.1987) ("We have consistently indicated our approval of a broad interpretation of ERISA's pre-emption provision."); Blakeman v. Mead Containers, 779 F.2d 1146, 1151 (6th Cir.1985) ("It is clear that common law causes of action for breach of

6. *See,* Defendant's exhibit C (Report of Dr. E.W. Elder).

7. *See,* Defendant's exhibit E (Report of Dr. John S. Wolfe).

8. 29 U.S.C. Section 1144(a) States in pertinent part that:

"... the provisions of this subchapter and subchapter III of this chapter shall supersede

any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ..."

The Supreme Court has consistently emphasized the broad scope of the language contained in ERISA's pre-emption provision. *See, Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 98, 103 S.Ct. 2890, 2900-01, 77 L.Ed.2d 490 (1983); *Alessi v. Raybestos Manhattan, Inc.,* 451 U.S. 504, 525, 101 S.Ct. 1895, 1907, 68 L.Ed.2d 402 (1981).

contract are pre-empted by ERISA."). Despite the plaintiff's attempt to circumvent the statutory mandate by alternatively characterizing his cause of action, such effort is one of futility since claims which allege wrongful conduct in the administration of an employee benefit plan are pre-empted by ERISA as well. *Blakeman,* 779 F.2d at 1151, *citing, Scott v. Gulf Oil,* 754 F.2d 1499, 1504 (9th Cir.1985); *see also, Turner,* 659 F.Supp. at 534. There is no question that plaintiff's second cause of action is clearly pre-empted in its entirety. Accordingly, summary judgment for defendant is hereby GRANTED.

## CONCLUSION

Consequently, this Court holds that the plaintiff's action is time barred by 29 U.S.C. Section 1113(a)(2), Section 413(a)(2) of the Employee Retirement Income Security Act ("ERISA"). Moreover, this Court holds that the decision of the defendant board cannot be disturbed since it was neither arbitrary nor capricious. Finally, this Court holds that the plaintiff's state law causes of action are pre-empted in their entirety by 29 U.S.C. Section 1144(a).

Accordingly, plaintiff's motion for summary judgment is DENIED and defendant's cross motion for summary judgment is hereby GRANTED.

IT IS SO ORDERED.