966 F.2d 190
 61 USLW 2016, 15 Employee Benefits Cas. 1755
 Danny MEADE, Plaintiff-Appellant,
v.
PENSION APPEALS AND REVIEW COMMITTEE; Ohio Laborers' Fringe
Benefit Programs; Laborer's District Council and
Contractors Pension Fund of Ohio,
Defendants-Appellees.
 No. 91-3415
 United States Court of Appeals,
Sixth Circuit.
 Argued April 6, 1992.
Decided June 4, 1992.
 
 William H. Baughman, Jr. (argued and briefed), Weston, Hurd, Fallon, Paisley & Howley, Cleveland, Ohio, John K. Everett Columbus, Ohio, for plaintiff-appellant.
 Randall S. Rabe, Baker & Hostetler, Columbus, Ohio, Richard H. Bamberger, John J. McGowan, Jr. (argued and briefed), Baker & Hostetler, Cleveland, Ohio, for defendants-appellees.
 Before: KEITH and MILBURN, Circuit Judges; and ENSLEN, District Judge.*
 ENSLEN, District Judge.
 This is an action for denial of disability benefits under an employee benefit plan regulated by the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, et seq. The district court granted summary judgment in favor of defendants 760 F.Supp. 671 and plaintiff appeals. For the reasons which follow, we reverse the decision of the district court and remand for proceedings consistent with this Opinion.
 I.
 Plaintiff-appellant, Danny Meade (Meade), filed the complaint in the Franklin County, Ohio Court of Common Pleas on January 14, 1988. Named as defendants are the Laborers' District Council and Contractors Pension Fund of Ohio (Fund) and the Pension Appeals and Review Committee (Committee), which is a subcommittee of the Board of Trustees (Trustees) of the Fund. Meade was employed as a general laborer through August 1979, at which time he sustained a back injury for which he claims to be entitled to the "total and permanent" disability benefits provided under the terms of the Fund.
 On January 16, 1988, defendants-appellees filed a notice of removal pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. § 1445, seeking to remove the case to the United States District Court for the Southern District of Ohio. On cross-motions for summary judgment, the district court granted summary judgment in favor of defendants and plaintiff appeals.
 There are no material disputes of fact in this case. During the course of Meade's employment as a general laborer, contributions on his behalf were made to the Fund by his employers. Meade has not worked since suffering the back injury in August 1979. In May 1981, Meade applied for total and permanent disability benefits under the terms of the pension plan. The Fund, by its terms, provides participating members and their eligible dependents with pension and other benefits. One of the benefits available under the Fund is a disability benefit. However, the Fund's plan document specifically provides that to be eligible for a disability benefit, a participant must satisfy four separate conditions. The four conditions, as set forth in the Fund's Plan document, are as follows:
 (a) The beneficiary meets the Pension Fund's general definition of "Permanent and Total Disability;" and(b) the beneficiary has accumulated at least ten (10) years of Pension credit; and
 (c) he or she has earned at least 250 hours of service in the calendar year in which the disability occurred or in the calendar year immediately preceding the year in which the disability occurred; and
 (d) the disability shall have occurred prior to age 62.
 Plan, Article VII § 1. In support of his application for total and permanent disability benefits, Meade submitted a notice from the Social Security Administration, indicating that he had been declared a qualifying recipient for Social Security Benefits. Upon request, Meade submitted an additional medical report of his then attending physician, Dr. F.W. Elder.
 Contrary to Meade's assertion that he was "permanently" disabled, Dr. Elder's examination report indicated that Meade was only "temporarily" totally disabled. The report also indicated that the disability did not commence until approximately July 10, 1981--two years after Meade was deemed to have left the trade.[1] Upon receipt of Dr. Elder's report, the administrator of the Fund decided to obtain a second medical opinion. Meade agreed to submit to another examination by a different physician, Dr. Wolfe. Dr. Wolfe concluded that Meade in fact had very little disability and that he could return to work without any restriction.
 On the basis of the reports of Dr. Elder and Dr. Wolfe, Meade's application for total and permanent disability benefits was denied. Meade appealed the decision to the Committee, and the decision to deny benefits was upheld. Meade was notified of the denial in January 1982.
 Almost three years after Meade's 1981 application for benefits was denied on appeal, Meade filed a second application for the same disability benefits in December 1985. In support of this second application, Meade submitted a medical report of Dr. Paul J. Matkra, his then attending physician. Dr. Matkra's initial report stated that Meade had not become totally and permanently disabled until 1984. However, in subsequent submissions, Dr. Matkra stated that Meade was disabled in 1979 rather than in 1984. Because of unreliability, the additional evidence was considered inconclusive and Meade's second application was also denied. Meade again appealed the second denial to the Committee. Upon request by the Committee, Meade submitted to yet another physical examination by Dr. Kackley, a physician selected by the Committee. Based upon his personal examination of Meade, review of Meade's medical records, and consideration of Meade's narrative description of his medical history, Dr. Kackley concluded that Meade was totally and permanently disabled in 1979. Despite Dr. Kackley's opinion, the Committee upheld the initial decision to deny benefits. The Committee questioned Dr. Kackley's ability to conclude on what date Meade had originally become totally and permanently disabled. Dr. Kackley himself stated in his deposition that it was medically impossible to pinpoint the date on which Meade had become totally and permanently disabled. The Committee notified Meade of its decision on or about December 5, 1986.
 Meade filed this complaint a little more than a year later in January 1988. The district court found that Meade's complaint was time barred by 29 U.S.C. § 1113(a)(2) and that, even if not time barred, the decision to deny benefits could not be disturbed because it was neither arbitrary nor capricious.
 II.
 This Court reviews a district court's grant of summary judgment de novo. McKee v. Cutter Laboratories, Inc., 866 F.2d 219, 220 (6th Cir.1989); Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987). Granting summary judgment is appropriate "[w]here the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial." Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); see Fed.R.Civ.P. 56(c). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted).
 III.
 Meade raises two issues on appeal. First, he argues that the entire complaint is not time barred because he included in his complaint a claim for benefits under the Fund's Plan, for which the statute of limitations is fifteen years. Second, he maintains that before applying the arbitrary and capricious standard of review to the decision to deny benefits, the district court had to review the employee benefits plan to determine whether it gives to the plan administrator discretionary authority to determine benefits.
 A.
 Meade argues that a fifteen year statute of limitations should apply because in addition to asserting a breach of fiduciary duty claim, he also asserted a claim for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). Appellees argue that the three year statute of limitations applied by the district court was proper. We find that Meade asserted in his complaint a claim for benefits under the employee benefits plan agreement pursuant to 29 U.S.C. § 1132(a)(1)(B) and that a fifteen year statute of limitations should apply to this claim.
 In the complaint, Meade did not specify the section/s of ERISA under which he was seeking relief. Without any discussion, the district court stated in its Opinion: "[The complaint] alleges that the defendant's [sic] wrongfully denied him disability benefits that he was entitled to under the terms of the pension plan. Clearly, these allegations assert that the defendant has breached its fiduciary duty in the maintenance and disbursement of funds under the plan...." Opinion and Order at 7. The district court concluded that Meade's action was solely a breach of fiduciary duty claim despite characterizing Meade's action in other parts of the Opinion and Order as a claim for benefits brought pursuant to 29 U.S.C. § 1132(a). The district court found that the statute of limitations for a breach of fiduciary duty claim was three years. The court concluded that plaintiff knew that his rights had been violated in 1981 and, thus, determined that the statute began to run at that time. Accordingly, the district court granted summary judgment in favor of defendants-appellees.
 Appellees allege that Meade did not sue the proper party and did not pursue in the lower court a claim for benefits under the agreement. We find that Meade did, in fact, sue the proper parties and alleged a claim for benefits due under the plan agreement. The lower court should have addressed this claim when determining the applicable statute of limitations.
 Section 1132(a) provides standing to participants to bring various types of civil actions, including an action for recovery of benefits to which the participant is entitled under the terms of the plan, an action to enforce rights under the plan, and an action to clarify rights to future benefits under the plan. 29 U.S.C. § 1132(a)(1)(B). Participants also have standing to bring actions "for appropriate relief under section 409 [29 U.S.C. § 1109]." Id. § 1132(a)(2). Section 1109 establishes guidelines for fiduciary liability.[2] Finally, section 1132(a)(3) authorizes participants to obtain equitable relief to redress ERISA violations and to enforce ERISA provisions or terms of the plan.[3]
 In Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 148, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985), the Supreme Court held that a participant does not have a cause of action against a fiduciary for extra-contractual or punitive damages because recovery for a violation of fiduciary duty under 29 U.S.C. § 1109 inures to the benefit of the plan. However, in Warren v. Society Nat'l Bank, 905 F.2d 975, 979 (6th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2256, 114 L.Ed.2d 709 (1991), the Sixth Circuit found that a fiduciary could be held liable to a participant under section 1132(a)(3) for contract violations where the injuries alleged are "direct injuries" resulting from the fiduciary violation. Id. at 980. The fiduciary would not be liable for punitive damages or consequential injuries. Id. However, the fiduciary could be held liable to a participant for direct injuries caused by the breach, as "other appropriate equitable relief" under section 1132(a)(3)(B)(i). Id. at 982.
 In his complaint, Meade named two defendants: the Fund and the Committee, which is a fiduciary for the Fund. Even if Meade did only pursue in the lower court claims against the Committee, as appellees allege, pursuant to Warren Society, the Committee could be held liable for direct damages resulting from a breach of the agreement.
 Meade also asserted two distinct claims in his complaint. In the first claim, Meade alleges arbitrary and capricious conduct, bad faith, fraud, and misuse of pension funds. The second claim includes allegations of the existence of a contract, a right to disability benefits under the contract, and violation of the contract. In the prayer for relief, Meade seeks a declaratory judgment that the denial of the disability claim was "arbitrary, capricious and in bad faith and constituted a breach of contract, fraud, and a misuse of pension funds." Finally, Meade seeks in his complaint a judgment that he is entitled to disability pension benefits retroactive to August 1979, punitive damages, and costs.
 Clearly, Meade alleged in his complaint both a claim for breach of fiduciary duty and a claim for benefits due under the employee benefit plan, and he sought relief for both. The trial court should have addressed both claims in ruling on the parties' motions for summary judgment. The general rule is that the circuit court will not address issues on appeal that were not raised and ruled upon below. Hall v. Knott County Bd. of Ed., 941 F.2d 402, 409 (6th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 982, 117 L.Ed.2d 144 (1992). However, the Sixth Circuit may address a claim that has not been ruled on by the district court "in exceptional circumstances." Id. Such circumstances exist where "the proper resolution is beyond doubt" or where " 'injustice might otherwise result.' " United States v. Baker, 807 F.2d 1315, 1321 (6th Cir.1986) (citing Singleton v. Wulff, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877-78, 49 L.Ed.2d 826 (1976)). We find that even if Meade did not pursue his properly pled claim for benefits under the contract in the motion for summary judgment before the lower court, injustice would result were we not to consider it in determining the statute of limitations applicable to all the claims asserted in the complaint.
 
 
 1
 The parties agree that ERISA provides no statute of limitations for section 1132(a)(1)(B) actions and that in the absence of a federally mandated statute of limitations, the court should apply the most analogous state law statute of limitations. Consistent with other circuits that have addressed this issue, we find that the most analogous Ohio statute of limitations is that provision applicable to breach of contract claims. See Ohio Rev.Code § 2305.06.[4] Other courts have uniformly characterized section 1132(a)(1)(B) claims as breach of contract claims for purposes of determining the most analogous statute of limitations under state law. E.g., Fogerty v. Metropolitan Life Ins. Co., 850 F.2d 430, 432 (8th Cir.1988), overruled on other grounds, Johnson v. State Mutual Life Assurance Co., 942 F.2d 1260, 1266 (8th Cir.1991) (en banc); Dameron v. Sinai Hosp., Inc., 815 F.2d 975, 981 (4th Cir.1987); Cowden v. Montgomery County Society for Cancer Control, 591 F.Supp. 740, 754-55 (S.D.Ohio 1984).
 
 
 2
 Appellees argue that even if Meade's claim is viewed as a claim for benefits under section 1132(a)(1)(B), the fifteen year statute of limitations, available under Ohio Rev.Code § 2305.06, should not apply. Appellees challenge application of the Ohio statute of limitations applicable to breach of contract claims simply on the grounds that it is too long in relation to the three or six years provided under ERISA for claims against a fiduciary. Appellees provide no case law to support its claim and the court could find none. See Johnson, 942 F.2d at 1266 (application of ten year statute of limitations pursuant to most analogous state law is consistent with legislative mandate). Meade urges the Court to find that Ohio has no analogous state law statute and that the four year limitations period, applicable to a remedy for an injury not clearly founded upon a written contract, Ohio Rev.Code § 2305.09, should control. In our view, that outcome is unsatisfactory. Ohio does have an analogous statute of limitations that is applicable to written contracts, and the Plan at issue in this case constitutes a written contract.
 
 
 3
 Appellees' final argument is that even if the court finds that the fifteen year statute of limitations claim is the most analogous state law statute of limitations to a section 1132(a)(1)(B) claim, the doctrine of laches should apply to the complaint at issue. However, delay in asserting a right is not sufficient in and of itself. In order for the doctrine of laches to apply to a claim for equitable relief under Ohio law, the delay must have resulted in prejudice to the defending party. Emrik v. Multicon Builders, Inc., 57 Ohio St.3d 107, 111, 566 N.E.2d 1189 (1991) (quoting Smith v. Smith, 168 Ohio St. 447, 156 N.E.2d 113 (1959)). Appellees have not demonstrated any prejudice, other than the expense of having to keep fund records for a longer period of time. Appellees have not alleged that they did not keep Meade's records, nor have they shown that application of the fifteen year statute of limitations would otherwise prejudice their defense in this action.
 
 B.
 
 4
 The second issue is whether, pursuant to Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the district court, before applying the arbitrary and capricious standard, should have reviewed the employee benefit plan at issue to determine if it gives to the plan administrator discretionary authority to determine benefits. The district court held that even if the statute of limitations had not run as to Meade's entire complaint, defendant was "well within its discretion to deny benefits to the plaintiff." Opinion and Order at 13. Without any review of the plan provisions, the lower court applied an arbitrary and capricious standard of review to the decision to deny Meade disability benefits.
 
 
 5
 ERISA does not provide for the standard of review the courts should apply to the many types of actions that may be brought pursuant to its provisions. In Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court established the standard of review which should apply to section 1132(a)(1)(B) claims regarding the decisions of plan administrators or fiduciaries to deny benefits. The Court held: "[W]e hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard of review unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility or to construe the terms of the plans." Id. at 115, 109 S.Ct. at 956. Relying on the established common-law principles of trust law, the Court further ruled that "the de novo standard of review applies regardless of whether the plan at issue is funded or unfunded and regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest." Id. Prior to the district court's decision at issue in this case, the Sixth Circuit held that Firestone should apply retroactively. Perry v. Simplicity Engineering, 900 F.2d 963, 965 n. 2 (6th Cir.1990).
 
 
 6
 Meade argues that pursuant to Firestone, the court should have reviewed the decision de novo because it had not examined the benefit plan to make a finding that it gave the administrator or fiduciary discretionary authority to determine benefit eligibility or to interpret the terms of the plan. Appellees argue that the court should not apply Firestone for two reasons. First, appellees maintain that Firestone is inapplicable because the plan at issue in this case is a multi-employer plan. According to appellees, multi-employer plans, unlike single-employer plans, are not fraught with the danger of self-interested determinations and all multi-employer plans, by definition, empower fiduciaries with the authority to determine benefit eligibility and to construe the plan's terms. Appellees also argue that the court should not apply Firestone because Meade did not raise Firestone in its arguments before the lower court.
 
 
 7
 Both of appellees' arguments are without merit. Firestone's ruling is not limited to single-employer plans. The fact that the plan at issue in this case is a multi-employer plan is irrelevant under Firestone's explicit holding that the de novo standard of review applies regardless of the existence of a conflict of interest. Id. ("Because we do not rest our decision on the concern for impartiality that guided the Court of Appeals, we need not distinguish between types of plans or focus on the motivations of plan administrators and fiduciaries"). The facts that Meade did not raise the Firestone rule or introduce the plan into evidence before the district court are not dispositive.
 
 
 8
 Firestone applies as a matter of law to Meade's section 1132(a)(1)(B) claim for benefits under the Plan. The district court should have examined the plan pursuant to Firestone to determine the appropriate standard of review of the decision to deny benefits. Accordingly, the district court's Order granting summary judgment in favor of defendants-appellees is REVERSED; this action is REMANDED to the district court for a determination of whether the plan gives the fiduciary discretionary authority to determine benefits and for subsequent proceedings pursuant to the proper standard of review determined in accordance with Firestone.
 
 
 
 *
 The Honorable Richard A. Enslen, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 Meade is deemed to have left the trade in 1979 because that was the last calendar year in which he had the requisite 250 hours of service
 
 
 [2]
 Section 1109(a) provides:
 Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.
 29 U.S.C. § 1109.
 
 
 [3]
 Section 1132(a)(3) provides that a participant may bring an action "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3)
 
 
 [4]
 The statute provides in relevant part: "[A]n action upon a specialty or an agreement, contract, or promise in writing shall be brought within fifteen years after the cause of action accrued." Ohio Rev.Code § 2305.06